**In re Ralph O. DOUGLAS, Appellant.**

No. 01–08–00542–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 31, 2010.

Rehearing Overruled Dec. 10, 2010.

Ralph O. Douglas, Rosharon, TX, pro se.

Panel consists of Justices KEYES, SHARP, and MASSENGALE.

## OPINION

EVELYN V. KEYES, Justice.

Appellant Ralph O. Douglas [1] filed a petition for bill of review seeking to set aside a judgment entered against him in a breach of contract suit he filed against Jimmie and Christine Jones. Because he is an inmate and he filed an affidavit or unsworn declaration of inability to pay costs, Douglas' lawsuit was, and is, subject to Chapter 14 of the Civil Practice and Remedies Code, which addresses inmate

---

1. Douglas' suit was dismissed by the trial judge prior to service of citation. As a result, the defendants named in Douglas' petition for bill of review were never informed of the suit nor were they given an opportunity to enter an appearance in this case. Moreover, Douglas does not raise any issues or points of error with respect to any of the named defendants. Thus, there are no "appellees" for purposes of this appeal. *See Yilmaz v. McGregor*, 265 S.W.3d 631, 637 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ("To be a 'party' to a lawsuit, one generally must be named in the pleadings and either be served, accept or waive service, or make an appearance. Merely being named in a petition as a defendant does not make one a 'party' to the lawsuit."); *Ex parte Bowers*, 886 S.W.2d 346, 349 (Tex.App.-Houston [1st Dist.] 1994, writ dism'd w.o.j.) ("A party to a suit generally is one named in the pleadings, who is served, accepts or waives service, or appears, and who participates at trial and contests the cause of action"); *see also Mapco, Inc. v. Carter*, 817 S.W.2d 686, 687 (Tex.1991) (holding judgment may not be rendered against defendant unless upon service, acceptance or waiver of process, or appearance); *Showbiz Multimedia, LLC v. Mt. States Mortg. Ctrs., Inc.*, 303 S.W.3d 769, 771 n. 3 (Tex.App.-Houston [1st Dist.] 2009, no pet.) (appellee must be party to trial court's final judgment and someone against whom appellant raises issues or points of error in appellant's brief) (citing *Gray v. Allen*, 41 S.W.3d 330, 331 n. 2 (Tex.App.-Fort Worth 2001, no pet.)).

litigation.[2] On May 23, 2008, the trial court issued orders (1) declaring Douglas a vexatious litigant under Chapter 11 of the Texas Civil Practice and Remedies Code and (2) dismissing his petition for bill of review pursuant to Chapter 14 of the Code as frivolous and malicious inmate litigation. Douglas filed a notice of appeal and an affidavit of inability to pay costs.

We affirm.

## BACKGROUND

This case arises out a petition for bill of review filed by Douglas with respect to two consolidated cases he filed against the defendants in this case in 2001, Jimmie W. and Christine Jones. The trial court dismissed the petition for bill of review for want of prosecution; it declared Douglas a vexatious litigant under section 11.101 of the Texas Civil Practice and Remedies Code, reciting his litigation history and observing that he had previously been declared a vexatious litigant; and it dismissed his appeal as a frivolous and malicious appeal brought by an inmate in violation of section 14.003 of the Texas Civil Practice and Remedies Code.

### A. Proceedings

#### 1. Douglas's criminal conviction

██ According to the trial court's order, incorporated in the record of this case, Jones, a person with an eighth grade education, was looking for a lender to help him avoid foreclosure on his home at 11515 Lockgate Lane in Houston, Texas.[3] He contacted Douglas, who told him that he could assist him in obtaining a loan. While assisting Jones to fill out several "loan" forms, Douglas had Jones sign a warranty deed. Jones later testified that he did not want to sell his house, that he did not know what a warranty deed was, and that he would not have signed the deed if he had understood that Douglas intended to secure a loan in his own name using the Joneses' house as collateral. Subsequently, Douglas attempted to evict Jones and later deeded the property to another person.

In August 2002, a jury convicted Douglas of theft of property in the aggregate amount of between $1000 and $200,000 and, due to enhancement for a prior theft, sentenced him to life in prison and to a $10,000 fine. The Fourteenth Court of Appeals affirmed the judgment on August 29, 2002, and the Court of Criminal Appeals denied Douglas's petition for review. The defendants in the instant case, Jimmie W. Jones and Christine Jones, were victims of the theft for which Douglas is incarcerated.

#### 2. Douglas's 2001 consolidated suits against the Joneses and 2004 appeal

The 127th Judicial District Court of Harris County became involved in Doug-

---

**2.** See Tex. Civ. Prac. & Rem.Code Ann. § 14.002 (Vernon 2002).

**3.** In its order, the trial court took judicial notice of other facts in its records. A court may take judicial notice of its own records "between the same parties involving the same subject matter." Douglas v. Am. Title Co., 196 S.W.3d 876, 878 n. 1 (Tex.App.-Houston [1st Dist.] 2006, no pet.); see also Office of Pub. Utility Counsel v. Public Utility Comm'n of Tex., 878 S.W.2d 598, 600 (Tex.1994) (per curiam) (citing Tex.R. Civ. Evid 201(b)(2), which provides that, to be proper subject of judicial notice, fact must be "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned," and holding that court of appeals erred in failing to take judicial notice of PUC ratemaking order affirmed by trial court whose "authenticity and contents ... are capable of accurate and ready determination by resort to a published record whose accuracy cannot reasonably be questioned").

las's dispute with the Joneses in August, 2001, when, as an inmate in the Texas Department of Criminal Justice—Institutional Division (TDCJ), Douglas filed a pro se action in forma pauperis against the Joneses in trial court cause number 2001–43967. Jones subsequently filed a second case against the Joneses, No. 2001–47586, on September 17, 2001, and the trial court consolidated the cases. Douglas's petition indicated he was suing the Joneses for breach of contract and fraud regarding the property at "11515 Lockwood (sic)". After determining that the United States Bankruptcy Court had already considered the contested issues between the parties, the 127th District Court "dismissed the cases with prejudice as to any further suit by Mr. Douglas against Jimmy W. and Christine Douglas" on August 12, 2004. On January 13, 2005, the Fourteenth Court of Appeals dismissed Douglas's appeal for want of prosecution.

### 3. Douglas's 2006 petition for bill of review of the consolidated cases

On June 19, 2006, Douglas filed a petition for bill of review in the trial court, seeking again to set aside the trial court's August 12, 2004 judgment. In his petition, Douglas contended he was entitled to a bill of review because he had a meritorious claim for breach of contract against the Joneses which he was prevented from raising in his 2004 attempted appeal of the consolidated cases due to official mistake, *i.e.*, the district clerk's alleged failure to serve him a copy of the judgment. He also paid the filing fee of $197 and filed an affidavit of inability to pay costs. Douglas did not serve with citation the defendants named in his petition for bill of review. Therefore, they never entered an appearance in this case.

On October 4, 2006, Douglas filed "Plaintiff's No–Evidence Motion for Summary Judgment" in the district court, claiming that the trial court had held a hearing and had dismissed his August 27, 2001 petition against the Joneses on August 12, 2004 "for reasons unknown." Douglas reiterated his claims of breach of contract against the Joneses, alleged that adequate time for discovery had passed, and sought summary judgment against them.

On January 31, 2007, the trial court notified Douglas that his bill of review was scheduled for dismissal for want of prosecution on March 2, 2007 unless he could show good cause why it should be retained. The notice stated, "This case is eligible because our records indicate that the referenced cause has no service and or no answer(s)."

On February 8, 2007, after receiving the January 31, 2007 notice from the district court, Douglas filed a "Motion to Retain" in that court, stating that on receiving his declaration in forma pauperis for the filing of the bill of review, "the district clerk inadvertently did not include the fee for the constable to serve defendants with the citation." He attached an inmate's declaration and asked the court to allow him "to request the clerk to serve defendants the citation" and to retain the cause on its docket.

On April 22, 2008, the trial court again sent a notice to Douglas stating that, on May 16, 2008, it would sua sponte consider dismissing his case "for want of prosecution or under Chapter 14 of the Civil Practice and Remedies Code" and that "[a]t that time, the Court will also determine whether Ralph O. Douglas, the plaintiff in this matter, should be declared a vexatious litigant pursuant to Chapter 11 of the Texas Civil Practice and Remedies Code."

On May 23, 2008, the trial court issued orders (1) dismissing Douglas's cause of action as "malicious, frivolous, without basis in law and . . . brought for the purpose

of harassing the defendants" and, therefore, subject to dismissal under Chapter 14 of the Texas Civil Practice and Remedies Code, which prohibits the filing of such suits by inmates who have filed affidavits of indigency, and (2) finding him to be a vexatious litigant and prohibiting him from filing any new pro se litigation in Harris County, Texas without first being granted permission to file by the local administrative judge. The order notified him that he was "subject to punishment by contempt if he fails to obey this order."

### B. The Trial Court's Order Appealed From

#### 1. The trial court's order finding Douglas to be a vexatious litigant

The trial court's order finding Douglas to be a vexatious litigant was issued pursuant to the court's authority under Chapter 11 of the Texas Civil Practice and Remedies Code to declare a litigant vexatious on its own motion. TEX. CIV. PRAC. & REM.CODE ANN. § 11.101 (Vernon 2002). The order states:

> On January 13, 2005, the Fourteenth Court of Appeals dismissed Mr. Douglas's appeal for want of prosecution. Not to be deterred, Mr. Douglas filed this suit against Jimmie and Christine Jones, on June 19, 2006.
>
> It has come to the Court's attention that, since his conviction, Mr. Douglas has also sued his other victims—Linda Porter, Hattie Mae Willis, and Vernon King[—]multiple times. He has also sued the title company, American Title Company, and the lending institutions he involved in his schemes, Washington Mutual, Anson Financial, Inc., Quaker Home Financial Services, Bank of America, and Unity National Bank. According to Westlaw, Mr. Douglas has filed at least nineteen appeals and man-

damuses involving his victims and these assorted lending institutions since 2003. Once he became an inmate, Douglas has continuously filed malicious, frivolous law suits against his victims, which have been repeatedly determined to have no basis in law. The Court cannot allow litigants to abuse the judicial system and harass their victims from the security of a prison cell. The Court FINDS that Douglas is such a litigant and his conduct is subject to review and action by this Court.

Having noted that it had the authority on the defendant's motion or sua sponte to designate a party as a vexatious litigant under section 11.101 of the Civil Practice and Remedies Code, the court referenced the standard for a court's finding a person to be a vexatious litigant under section 11.054 of the Code, namely "if there **is not** a reasonable probability that he will prevail in litigation **and** the party has a history of filing or repeatedly re-litigating unsuccessful or frivolous suits." *See id.* § 11.054 (Vernon 2002). As grounds for its determination that there was not a reasonable probability that Douglas would prevail, the court recited the determination by the 179th District Court,

> when convicting him of theft, ... that Ralph O. Douglas did not own the property at 111515 Lockridge Lane [*sic* ] and that any fraud in the transaction was attributable to Douglas, not the Joneses. Later, the U.S. Bankruptcy Court determined that the Joneses owned the property and that Douglas had no valid claim. Finally, this Court issued its own final judgment in this matter on August 12, 2004.

*See id.* § 11.054(2)(B).

After reviewing the record and all pleadings in the case, the trial court found that there was no reasonable probability that Douglas would prevail in the action, and it

further found that he had commenced "at least five *pro se* actions" that had been finally determined against him, or permitted to remain pending at least two years without trial, or determined by a trial or appellate court to be frivolous. *See id.* § 11.054(1). The court also found (1) that Douglas was "re-litigating or . . . attempting to re-litigate *pro se,* the validity of the determination against him in favor of Jimmie W. and Christine Jones" and (2) "attempting to re-litigate the cause of action and/or any issue of fact or law against Jimmy W. and Christine Jones." *See id.* § 11.054(2). The court further found "that Ralph O. Douglas has previously been declared a vexatious litigant by a state court in an action based on the same or substantially similar facts." *See id.* § 11.054(3). Therefore, "[a]fter reviewing the record and considering the motions," the trial court found Douglas to be a vexatious litigant. The order attached a list of 22 opinions or final orders issued in suits filed by Douglas against the defendants in this suit and against other persons and entities related to the events described in the trial court's order.

The court ordered Douglas "prohibited from filing *in propria persona* any new litigation in Harris County, Texas without first being granted permission to file by the local administrative judge," with such permission to be granted "only if the litigation appears to have merit and is not filed for purposes of harassment or delay," and it ordered that "such permission may also be conditioned on the furnishing of a security." It notified Douglas that "he is subject to punishment for contempt if he fails to obey this order."

### 2. *The trial court's order dismissing Douglas's suit as frivolous and malicious*

In its May 23, 2008 order, the trial court also found, pursuant to Chapter 14 of the Civil Practice and Remedies Code governing indigent inmate litigation filed "in propria persona," or pro se, that Douglas was currently an inmate and had filed an affidavit of indigency in the proceeding and that no hearing was necessary to determine whether his claims should be dismissed. *See id.* § 14.003 (Vernon 2002). It further found that Douglas's suit was "malicious, frivolous, without basis in law and . . . brought for the purpose of harassing the defendants." *See id.* § 14.003(a)(2). It, therefore, ordered his cause of action dismissed pursuant to Chapter 14 of the Texas Civil Practice and Remedies Code, which permits dismissal of "frivolous or malicious" claims filed by inmates who file affidavits of indigency. *See id.* Finally, it ordered a certified copy of the order sent to the Executive Director, TDCJ, and the Chair of the Texas Board of Pardons and Paroles. *See id.* § 14.003(e).

### C. Douglas's Appeal to this Court

On June 19, 2008, Douglas filed a notice of appeal in this Court and an affidavit of indigency in the trial court pursuant to the inmate litigation statute, Chapter 14 of the Texas Civil Practice and Remedies Code, and Rule 20.1 of the Texas Rules of Civil Procedure, governing civil cases filed by indigents. *See id.* § 14.002; Tex.R.App. P. 20.1. The record from the trial court also reflects that Douglas did not file an affidavit identifying his previous filings in propria persona, describing each, stating the operative facts, identifying each party, and stating the result and, for each suit dismissed as frivolous or malicious, stating the date of the final order affirming the dismissal and attaching a certified copy of his trust account statement, as also required by Chapter 14. *See* Tex. Civ. Prac. & Rem.Code Ann. § 14.004. The district clerk requested that the county attorney

file a contest to the affidavit of indigency. That contest was filed on June 25, 2008, but the trial court did not hold a hearing on the contest. Therefore, on February 20, 2009, this Court, in a memorandum order, deemed the statements in the affidavit of indigency true and ordered that Douglas be permitted to proceed without payment of costs pursuant to Rule 20.1(i)(4). *See* TEX.R.APP. P. 20.1(i)(4).

Douglas appeals both the trial court's dismissal of his petition for bill of review as frivolous and malicious and the trial court's vexatious litigant finding. He contends the trial court held a hearing on August 12, 2004 in the consolidated suits he had brought against the Joneses and then dismissed the suit "for reasons unknown." He contends that the district clerk committed "official mistake" by failing to send him a copy of the signed judgment. Despite claiming never to have received a copy of the judgment, Douglas nevertheless avers on appeal that he filed a Motion for New Trial on August 31, 2004. He states that, after the motion was denied by operation of law, he filed a notice of appeal on November 8, 2004. He admits that on January 18, 2005, the Fourteenth Court of Appeals dismissed his appeal of the dismissal of his petition for review for want of prosecution because he failed to pay for the clerk's record.

## DISCUSSION

Douglas raises four issues on appeal: (1) whether the trial court abused its discretion when it declared him to be a vexatious litigant under Chapter 11 of the Texas Civil Practice and Remedies Code; (2) whether the trial court's vexatious litigant finding is legally and factually sufficient; (3) whether the trial court abused its discretion in dismissing his petition pursuant to Chapter 14 of the Civil Practice and Remedies Code; and (4) whether the judg-

ment should be reversed due to judicial misconduct.

### A. Vexatious Litigant Finding Under Chapter 11, Texas Civil Practice And Remedies Code

In his first and second issues, Douglas argues that the evidence is insufficient to support the trial court's finding that he is a vexatious litigant because (1) the trial court's April 21, 2008 notice of its intent to declare him a vexatious litigant was untimely filed under section 11.51 of the Civil Practice and Remedies Code because his petition for bill of review was filed on June 19, 2006; (2) the trial court did not hold a hearing required by section 11.053 of the Code before declaring him a vexatious litigant; and (3) in violation of section 11.054(1) of the Code, the trial court failed to find that at least five of Douglas's previously filed 19 prior cases "had commenced in the seven-year period immediately preceding the date that the trial court filed its vexation-litigant motion," and had been either finally determined adversely to him or permitted to remain pending for at least years without having been brought to trial or hearing or determined by a trial or appellate court to be frivolous or groundless. Douglas contends that the trial court, therefore, abused its discretion in finding him to be a vexatious litigant.

#### 1. Standard of Review

■ Chapter 11 of the Texas Civil Practice and Remedies Code addresses vexatious litigants—persons who abuse the legal system by filing numerous, frivolous lawsuits. TEX. CIV. PRAC. & REM.CODE ANN. §§ 11.001–11.056 (Vernon 2002). We review a trial court's declaration of a vexatious litigant under an abuse-of-discretion standard. *Douglas v. Am. Title Co.*, 196 S.W.3d 876, 879 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *see* TEX. CIV. PRAC. & REM.CODE ANN. §§ 11.054–.056. The test

for an abuse of discretion is whether the court acted arbitrarily or unreasonably and without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985).

### 2. Construction of the Vexatious Litigant Statute

Douglas's first, second, and third issues requires us to construe the provisions of Texas's vexatious litigant statute, chapter 11 of the Civil Practice and Remedies Code.

Section 11.101 of the statute, under which Douglas was declared a vexatious litigant, provides,

(a) *A court may, on its own motion or the motion of any party, enter an order* prohibiting a person from filing, in propria persona, a new litigation in a court of this state *if the court finds, after notice and hearing as provided by Subchapter B [sections 11.051–.057]* that

(1) the person is a vexatious litigant; and

(2) the local administrative judge of the court in which the person intends to file the litigation has not granted permission to the person under Section 11.102 to file the litigation.

TEX. CIV. PRAC. & REM.CODE ANN. § 11.101(a) (emphasis added).

The only hearing provided for in Subchapter B, sections 11.051–.057 of the statute, is that referenced in section 11.053:

(a) *On receipt of a motion under Section 11.051*, the court shall, after notice to all parties, conduct a hearing to determine whether to grant the motion.

(b) The court may consider any evidence material to the ground of the motion, including:

(1) written or oral evidence; and

(2) evidence presented by witnesses or by affidavit.

*Id.* § 11.053 (emphasis added).

Section 11.051, referenced in section 11.053, in turn provides:

In a litigation in this state, the *defendant* may, on or before the 90th day after the date the defendant files the original answer or makes a special appearance, *move the court for an order:*

(1) determining that the plaintiff is a vexatious litigant; and

(2) requiring the plaintiff to furnish security.

*Id.* § 11.051 (emphasis added).

The rules of statutory construction require that "[w]ords and phrases shall be read in context and construed according to the rules of grammar and common usage." TEX. GOV'T CODE ANN. § 311.011 (Vernon 2005). Thus, courts "construe [a] statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *FKM P'ship Ltd. v. Bd. of Regents of the Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex.2008). Courts should not read a statute to create an absurd result. *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex.2004).

In construing a statute, whether or not it is considered ambiguous, a court considers, among other things, the "object sought to be attained," the "circumstances under which the statute was enacted," and the "consequences of a particular construction." TEX. GOV'T CODE ANN. § 311.023 (Vernon 2005); *Osterberg v. Peca*, 12 S.W.3d 31, 37 (Tex.2000). The court's primary aim is to give effect to the Legislature's intent. *Osterberg*, 12 S.W.3d at 37. It is presumed that the entire statute is

intended to be effective and that a just and reasonable result is intended. TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005); *FKM P'ship Ltd.*, 255 S.W.3d at 633.

Here, section 11.101 of the Code expressly states that "[a] court may, *on its own motion* or the motion of any party, enter an order prohibiting a person from filing, in propria persona, a new litigation … if the court finds, after notice and hearing as provided by Subchapter B [sections 11.051–.057] that … the person is a vexatious litigant and … the local administrative judge … has not granted permission to the person under Section 11.102 to file the litigation." TEX. CIV. PRAC. & REM.CODE ANN. § 11.101(a) (emphasis added).

■ Moreover, the evident purpose of the statute is to make it possible for courts to control their dockets rather than permitting them to be burdened with repeated filings of frivolous and malicious litigation by litigants without hope of success while, at the same time, providing protections for litigants' constitutional rights to an open court when they have genuine claims that can survive the scrutiny of the administrative judge and the posting of security to protect defendants. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 11.102 (providing that local administrative judge may grant permission to person found to be vexatious litigant under section 11.101 to file litigation only if it appears to judge that litigation "has merit" and "has not been filed for the purposes of harassment or delay," and permitting administrative judge to require posting of security for benefit of defendant).

The dissent, however, emphasizes the language in section 11.101(a) which states that a court may issue an order prohibiting a litigant from filing new litigation if the court finds, "*after notice and hearing as provided by Subchapter B [sections 11.051–.057],*" that the person is a vexatious litigant and the local administrative judge has not granted permission for the filing. Op. at 296–97 (quoting TEX. CIV. PRAC. & REM.CODE ANN. § 11.101). The dissent reasons that, because "[t]he only notice and hearing provisions in Subchapter B are set forth in section 11.053, and section 11.053 is contingent upon the defendant's timely request for a vexatious litigant order pursuant to section 11.051," the statute requires "the defendant's request within ninety days of filing the original answer is a statutory prerequisite for any vexatious litigant declaration." Op. at 297 (citing cases in which vexatious litigant claims were dismissed for failure of defendant to file motion within 90 days).[4]

4. Each of the cases cited by the dissent, with the exception of one, an unpublished memorandum opinion, is a case in which the defendant moved for an order declaring the plaintiff a vexatious litigant after the 90 day deadline in section 11.051 had passed. These cases are, therefore, inapplicable to this case. *See Dishner v. Huitt–Zollars, Inc.*, 162 S.W.3d 370, 377 (Tex.App.-Dallas 2005, no pet.) (holding trial court abused its discretion in declaring appellant vexatious litigant when motion was filed outside ninety-day time period); *In re Marriage of Grossnickle*, 115 S.W.3d 238, 252 (Tex.App.-Texarkana 2003, no pet.) ("[T]he 'vexatious litigant' statute applies only when filed within ninety days after date on which a defendant files his or her original answer."); *Spiller v. Spiller*, 21 S.W.3d 451, 454 (Tex.App.-San Antonio 2000, no pet.) (holding section 11.051 motion filed outside the ninety-day period was untimely).

In *Scott v. TDCJ–Inst. Div.*, No. 13–07–00718–CV, 2008 WL 4938265, at *3 (Tex. App.-Corpus Christi Nov. 20, 2008, no pet.) (mem. op.), the appellate court held that trial court abused its discretion by declaring inmate vexatious litigant because, inter alia, the vexatious litigant statute did not authorize the court to raise the issue sua sponte. The court based its conclusion on the holding by the Fourteenth Court of Appeals in *Akinwamide v. Transp. Ins. Co.*, No. 14–06–01054–CV, 2008

The dissent further observes that, "[i]n the present case, Douglas' petition for bill of review was dismissed prior to service of citation, thus the named defendants were never provided notice to enter an appearance in this suit, much less file a section 11.051 motion with the court." Op. at 297. Because no defendant was served, no defendant appeared in the case. Therefore, necessarily, no defendant moved within 90 days of the filing of Douglas's petition for bill of review for an order declaring Douglas a vexatious litigant; no notice of such a motion was given to all parties; and no hearing was held on such a motion at which all parties could provide evidence to support the motion. *See* TEX. CIV. PRAC. REM.CODE ANN. §§ 11.051, 11.053. Consequently, the hearing requirement in sections 11.05111.057 of the Code was not satisfied. Because it was not, the dissent would hold that "the trial court abused its discretion when it declared Douglas a vexatious litigant because the trial court did not comply with the mandatory statutory scheme." Op. at 297. We disagree.

The dissent's conclusion that the statute does not authorize the trial court to raise the vexatious litigant issue sua sponte is directly contrary to the explicit language and plain meaning of section 11.101(a), which states, "A court may, on its own motion or the motion of any party, enter an order prohibiting a person from filing, in propria persona, a new litigation ... if the court finds, after notice and hearing as provided by Subchapter B, that ... the person is a vexatious litigant." TEX. CIV. PRAC. & REM.CODE ANN. § 11.101(a). It thus renders that language superfluous and violates not only the plain meaning rule but the requirements of statutory construction that courts consider the *entire* statute and the purpose for which it was intended. TEX. GOV'T CODE ANN. § 311.021; *FKM P'ship Ltd.*, 255 S.W.3d at 633.

Moreover, by reading "notice and hearing as required by Subchapter B" as requiring that *all* motions filed under the vexatious litigant statute must be filed by *defendants*—never by the court on its own motion—and filed within 90 days of the date the litigation is filed, as provided in section 11.051, the dissent gives an unreasonable construction to section 11.101(a) that renders parts of the statute superfluous and defeats a primary purpose of the statute—namely, to recognize a statutory (as well as an inherent) right of courts to control their own dockets by finding plaintiffs to be vexatious litigants in appropriate cases in which the court's own records support the findings. It, therefore, leads

WL 660303 (Tex.App.-Houston [14th Dist.] Mar. 11, 2008, pet. denied) (memo. op.), concluding that the vexatious litigant statute did not provide for the courts to declare litigants vexatious sua sponte, but only to declare litigants vexatious on a motion of the defendant within 90 days of filing of suit; and it rejected Texas Supreme Court cases decided prior to the enactment of the statute holding that courts have inherent power to declare litigants vexatious. *Id.* at *4 (citing *Univ. of Tex. v. Morris*, 162 Tex. 60, 344 S.W.2d 426, 428 (1961); *Birdo v. Holbrook*, 775 S.W.2d 411, 412–14 (Tex.App.-Fort Worth 1989, writ denied)).

Neither the *Scott* court nor the *Akinwamide* court mentioned or considered section 11.101 of the Texas Civil Practice and Remedies Code. Moreover, in *Akinwamide*, the defendant had filed an untimely motion under section 11.054 of the Code seeking an order declaring the plaintiff a vexatious litigant, so that the court's discourse on the inherent power of the court to declare a litigant vexatious, to the extent it dealt with sua sponte motions of the court, was dictum because there was no such motion in the case. *Id.* To the extent *Scott* or *Akinwamide*, or any of the other cases cited by the dissent, holds that a court lacks both inherent and statutory power under the vexatious litigant statute to declare a litigant vexatious on its own motion, we disagree with those holdings.

to unreasonable results not intended by the Legislature.

An interpretation of section 11.101 that requires a motion by a defendant in order for a litigant to be found to be a vexatious litigant, and prohibits courts from finding that a litigant is vexatious on their own motion, not only defeats the clear intent of the Legislature but denies the trial court not only the statutory but the inherent right to control its own docket, including the inherent right to protect judicial resources from waste in frivolous and vexatious litigation, defeating the object of the statute. *See* Tex. Gov't Code Ann. §§ 311.021, 311.023; *Osterberg,* 12 S.W.3d at 37 (stating that court's primary aim is to give effect to Legislature's intent); *Leonard v. Abbott,* 171 S.W.3d 451, 452 (Tex. App.-Austin 2005, pet. denied) ("The purpose of chapter eleven is to restrict frivolous and vexatious litigation. It does not authorize courts to act arbitrarily, but permits them to restrict a plaintiff's access to the courts only after first making specific findings that the plaintiff is a vexatious litigant based on factors that are closely tied to the likelihood that the incident litigation is frivolous."); *Devoll v. State,* 155 S.W.3d 498, 501 (Tex.App.-San Antonio 2004, no pet.) (stating statute "provides a framework for courts and attorneys to curb vexatious litigation"); *see also Univ. of Tex. v. Morris,* 162 Tex. 60, 344 S.W.2d 426, 428 (1961) (holding, in pre-statutory case, that courts have equitable power to prevent vexatious litigation); *Birdo v. Holbrook,* 775 S.W.2d 411, 412 (Tex.App.-Fort Worth 1989, writ denied) (holding, in pre-statutory case, that "courts have the inherent power to protect the administration of justice from *pro se* plaintiffs who divert limited judicial resources to the handling of frivolous or harassing suits"). On the dissent's reading of the vexatious litigant statute, even if, as here, the plaintiff has been previously found to be a vexatious litigant and the court's own records bear out a long history of frivolous and malicious litigation filed by the plaintiff, the court cannot issue an order on its own motion preventing the plaintiff from filing new litigation without permission from the local administrative judge, as the plain reading of section 11.101 contemplates.

Douglas has been litigating against the Joneses since 2001, and he has been litigating this particular suit—among many others—ever since the judgment entered against him in 2004, without prosecuting his 2004 appeal and without ever serving the Joneses with his 2006 petition for bill of review. The dissent's reading of the vexatious litigants statute as an act that operates to bar future litigation against a vexatious litigant only upon a defendant's appearing in the court, *even if never served,* and filing a motion within 90 days of the filing of a suit—and even if the plaintiff's name appears on a vexatious litigants list and the court's own records are replete with previous cases filed by the plaintiff in propria persona—has the perverse effect of *rewarding* Douglas's frivolous and malicious actions, including his failing to prosecute his appeal in the Fourteenth Court of Appeals, then his filing this petition for bill of review in the district court, failing to serve the defendants with that petition, filing a motion for summary judgment against them, and prosecuting his appeal of the district court's vexatious litigant finding through this 2008 appeal, with its many subsequent filings, to this Court. By never serving the defendants and continuing to file in an *ongoing* suit—now nine years old—Douglas would be enabled by the language of the vexatious litigant statute as the dissent construes it not only to continue to absorb judicial resources (which a declaration of the plaintiff as a vexatious litigant statute would not, in any event, prevent) but to

thwart the future operation of the act against that litigant.

■ We conclude for the foregoing reasons that the trial court did not err in declaring Douglas a vexatious litigant on its own motion pursuant to section 11.101(a) of the vexatious litigant statute. Assuming, however, that section 11.101(a) requires notice to the parties and a hearing in all cases, we hold that the trial court's failure to hold a hearing was harmless under the circumstances of this case. The only "party" was Douglas himself and he was given notice on April 22, 2008 by the trial court of the court's intent to find him a vexatious litigant sua sponte and to dismiss his case "for want of prosecution or under Chapter 14 of the Civil Practice and Remedies Code" on May 16, 2008. *See Yilmaz v. McGregor*, 265 S.W.3d 631, 637 (Tex.App.-Houston [1st Dist.] 2008, pet. denied) ("To be a 'party' to a lawsuit, one generally must be named in the pleadings and either be served, accept or waive service, or make an appearance. Merely being named in a petition as a defendant does not make one a 'party' to the lawsuit."). The court's order finding Douglas to be a vexatious litigant and dismissing his case as "malicious and frivolous without any basis in law and . . . brought for the purpose of harassing the defendants" issued May 23, 2008. *See Dueitt v. Arrowhead Lakes Prop. Owners, Inc.*, 180 S.W.3d 733, 740–41 (Tex.App.-Waco 2005, pet. denied) (holding that trial court's failure to hold hearing pursuant to subchapter B of Chapter 11 of Civil Practice and Remedies Code is subject to harm analysis under Texas Rule of Appellate Procedure 44.1(a)).

Error requires reversal if it probably caused the rendition of an improper judgment or probably prevented appellant from properly presenting his case to the court of appeals. Tex.R.App. P. 44.1(a);

*Dueitt*, 180 S.W.3d at 741. Douglas did not object in the trial court to the failure to hold a hearing, nor did he advise the trial court of any evidence he would have presented at a hearing. Douglas has failed to show that he suffered any harm from being subjected to a vexatious litigant finding and pre-filing order that is substantively identical to prior vexatious litigant findings and pre-filing orders applicable to him. *See* Tex.R.App. P. 44.1(a); *Dueitt*, 180 S.W.3d at 741; *cf. Hall v. Treon*, 39 S.W.3d 722, 724 (Tex.App.-Beaumont 2001, no pet.) (holding there is no abuse of discretion in failing to hold permissive hearing under Chapter 14 of Civil Practice and Remedies Code when inmate has failed to demonstrate there is evidence he would have presented had hearing been held).

We hold, therefore, that any error in the trial court's failure to hold a hearing before finding Douglas to be a vexatious litigant was harmless.

### 3. Review of the Trial Court's Vexatious Litigant Finding

■ The trial court's May 23, 2008 order finding Douglas to be a vexatious litigant tracks the requirements for such a finding under the statute. Section 11.054 of the Civil Practice and Remedies Code sets out three alternative bases upon which a court may find a plaintiff to be a vexatious litigant, only one of which references the motion of a defendant but all of which the trial court's order in this case tracks:

A court may find a plaintiff a vexatious litigant if the defendant shows that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant and that:

(1) the plaintiff, in the seven-year period immediately preceding the date the defendant makes the motion un-

der Section 11.051, has commenced, prosecuted, or maintained in propria persona at least five litigations other than in a small claims court that have been:

(A) finally determined adversely to the plaintiff;

(B) permitted to remain pending at least two years without having been brought to trial or hearing; or

(C) determined by a trial or appellate court to be frivolous or groundless under state or federal laws or rules of procedure;

(2) after a litigation has been finally determined against the plaintiff, the plaintiff repeatedly relitigates or attempts to relitigate, in propria persona, either:

(A) the validity of the determination against the same defendant as to whom the litigation was finally determined; or

(B) the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant as to whom the litigation was finally determined; or

(3) the plaintiff has previously been declared to be a vexatious litigant by a state or federal court in an action or proceeding based on the same or substantially similar facts, transition, or occurrence.

TEX. CIV. PRAC. & REM. CODE ANN. § 11.054.

Section 11.055 of the vexatious litigant statute provides for the court's ordering the plaintiff to furnish security "for the benefit of the moving defendant" if "after hearing the evidence on the motion, [it] determines that the plaintiff is a vexatious litigant." TEX. CIV. PRAC. & REM. CODE ANN. § 11.055 (Vernon 2002). Sections 11.056 and 11.057 provide for dismissal for failure to furnish security and for the moving defendant to have recourse to the security furnished by the plaintiff if the litigation is dismissed on the merits. *Id.* § 11.056–.057 (Vernon 2002).

Although in all cases under the vexatious litigant statute the defendant must show "that there is not a reasonable probability that the plaintiff will prevail in the litigation against the defendant," only one of the three alternative grounds for finding a plaintiff to be a vexatious litigant set out in section 11.054 must be proved in addition to that showing. *See Douglas,* 196 S.W.3d at 880 (stating, on defendant's motion to declare Douglas vexatious plaintiff, that "in addition to the first requirement that there not be a reasonable probability that the plaintiff will prevail in the litigation against the defendant, the vexatious-litigant statute has a second requirement that the defendant prove one of three grounds before a trial court can declare a plaintiff a vexatious litigant"); *Nell Nations Forist v. Vanguard Underwriters Ins. Co.,* 141 S.W.3d 668, 670 (Tex.App.-San Antonio 2004, no pet.) (holding that "plain language" of section 11.054 "allows a trial court to find a litigant vexatious if she *either* 'repeatedly relitigates' *or* 'attempts to relitigate' a matter that has been finally determined against her").

Subsection (1) applies when a moving defendant shows that the plaintiff has commenced, prosecuted, or maintained in propria persona, in the seven years immediately preceding the date of his motion under section 11.051, at least five litigations that are adverse to himself, or permitted to remain pending at least two years, or determined to be frivolous or groundless. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 11.054(1).

Subsection (2) applies whenever a plaintiff attempts to relitigate, in propria persona, after litigation has been finally deter-

mined against him, either (a) "the validity of the determination against the same defendant" or (b) "the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant." *Id.* § 11.054(2); *Nell Nations Forist,* 141 S.W.3d at 670–71 (affirming dismissal with prejudice of "bill of review" filed by litigant who was attempting to relitigate in second suit " 'the cause of action, claim, controversy, or any of the issues of fact or law determined or concluded by the final determination against the same defendant' ... [that] satisfied one of the permissible statutory criteria of a vexatious litigant," and who was found to be vexatious litigant by trial court and failed to post bond required by vexatious litigants statute).

Subsection (3) applies whenever a plaintiff has been declared to be a vexatious litigant "on the same or substantially similar facts, transition *[sic]*, or occurrence." TEX. CIV. PRAC. & REM.CODE ANN. § 11.054(3).

In its 2008 order in this case finding Douglas, yet again, to be a vexatious litigant and dismissing his suit as frivolous and malicious, the trial court traced the history of Douglas's litigation against the Joneses and the rulings against him, satisfying the requirement in section 11.054 that the defendant must show there is not a reasonable probability that the plaintiff will prevail in the litigation. In addition, the court found that Douglas had commenced at least five *pro se* actions ... that have been finally determined against him; and/or permitted to remain pending for "at least two years without having been brought to trial; and/or determined by a trial or appellate court to be frivolous under state or federal law," as provided in section 11.054(1) and (2), and it attached to its order a list of 22 opinions in suits filed by Douglas. Finally, the court found that Douglas had "previously been declared a vexatious litigant by a state court in an action based on the same or substantially similar facts," satisfying the requirement in section 11.054(3).

The trial court's findings are supported by the record and by this Court's own records and publically available opinions and orders, of which we hereby take judicial notice. *See* TEX.R. EVID. 201(b)(2); *Office of Pub. Utility Counsel,* 878 S.W.2d at 600; *Douglas,* 196 S.W.3d at 878 n. 1.

Douglas has a long history in the First and Fourteenth Courts of Appeals testing the construction of the vexatious litigant statute. In an opinion published in 2006, *Douglas v. American Title Co.,* this Court held that the defendant title company, ATC, against which Douglas had filed an action to produce mortgage records he claimed it had a duty to produce, failed to establish that Douglas was a vexatious litigant because no evidence was offered to establish that the separate action was based on same or substantially similar facts as action to produce records. *Id.* at 882. We reached this conclusion even though we acknowledged that Douglas had been declared a vexatious litigant in a separate action by the 164th district court in *Douglas v. Quaker Home Fin. Serv's,* cause number 2003–2950. *Id.* at 878 & n. 2.

We held in *Douglas v. American Title* that the prohibition against Douglas's filing new litigation in propria persona without permission from the local administrative judge did not apply because Douglas's petition in that case was filed in January 14, 2004, and Douglas was not declared a vexatious litigant in *Douglas v. Quaker Home Financial Services* until March 24, 2004. *Id.* at 878 n. 3. We also held that ATC had failed to satisfy the requirements for proving Douglas a vexatious litigant

under subsection 11.054(2) because "we conclude[d] that the cause of action, claim, and controversy of the 2003 lawsuit were different from those of the 2004 lawsuit." *Id.* at 881. Specifically, "[i]n the 2003 lawsuit, Douglas sued ATC for breach of contract related to a property located at 4703 Sauer," whereas, "[b]y contrast, in the 2004 lawsuit, Douglas sued ATC for failure to produce documents for properties located at 5646 Belmark ("Belmark"), 3406 Milbrad ("Milbrad"), 11515 Lockgate ("Lockgate") [the Joneses' property]." *Id.* We observed that Douglas was indicted for real-estate fraud on the last three properties, but that he was not indicted for real-estate fraud on the Sauer property, nor did Douglas allege that ATC's allegedly wrongful acts were caused by the DA's office, as he had in the other litigation. *Id.* at 881 & n. 9. Therefore, we concluded that the criminal trial did not involve the same parties and causes of action. *Id.* at 881. We held that the trial court abused its discretion in declaring Douglas a vexatious litigant and remanded the case for further proceedings. *Id.* at 883.

After we reversed Douglas's suit against ATC and remanded it to the trial court, Douglas continued his career of frivolous and malicious in propria persona filings from prison. The Fourteenth Court of Appeals recounted the ATC saga in a memorandum opinion issued November 19, 2009, stating:

> In 1999, Douglas contracted with appellee American Title Company (ATC) to perform title services. *See Douglas v. Amer. Title Co.,* No. 01–04–00265–CV, 2005 WL 568290, at *1 (Tex.App.-Houston [1st Dist.] Mar. 10, 2005, no pet.) (memo. op.). Thereafter, Douglas was indicted for real estate fraud. *See id.* The Harris County District Attorney's Office requested that ATC halt all transactions related to properties covered by the fraud allegations, and ATC complied

with that request. *Id.* In response, Douglas sued ATC for breach of contract. *See id.* ATC filed a summary judgment motion, which the trial court granted. *Id.* at *2. Douglas then filed a restricted appeal, which was dismissed for lack of subject matter jurisdiction. *Id.* at *3.

> In 2004, Douglas filed a second suit against ATC complaining of its failure to produce mortgage records. *See Douglas v. Amer. Title Co.,* 196 S.W.3d 876 (Tex.App.-Houston [1st Dist.] 2006, no pet.). In response to ATC's motion to have Douglas declared a vexatious litigant pursuant to Chapter 11 of the Texas Civil Practice and Remedies Code, the trial court ordered Douglas to pay security in the amount of $5000. *See id.* at 878; *see also* Tex. Civ. Prac. & Rem. Code Ann. §§ 11.054–.056 (Vernon 2002). The trial court then dismissed the suit because Douglas failed to furnish the ordered security within the time set out in the vexatious litigant order. *See Douglas,* 196 S.W.3d at 879; *see also* Tex. Civ. Prac. & Rem.Code Ann. § 11.056 (Vernon 2002). The First Court of Appeals reversed the judgment, finding the trial court abused its discretion in granting ATC's vexatious litigant motion for security, and remanded the case to the trial court. *See Douglas,* 196 S.W.3d at 883. No subsequent appeals in the 2004 suit are reported, but Douglas has acknowledged that the 2004 suit was dismissed pursuant to Chapter 14 of the "Civil Practice and Remedies Code." *See* Tex. Civ. Prac. & Rem.Code Ann. § 14.003 (Vernon 2002) (permitting dismissal of an inmate's claim if the court finds the claim is frivolous or malicious). An appeal in the 2004 suit is pending at the First Court of Appeals under case number 01–07–00358–CV.

In 2007, Douglas filed this new suit against ATC seeking mortgage documents on the same properties named in the 2004 suit. On March 13, 2008, the trial court issued a "Notice of Intent to Dismiss—No Answer Filed." ... Douglas filed a motion to retain on April 2, 2008. On April 30, 2008, the trial court signed an order dismissing the case for want of prosecution, stating Douglas failed to comply with the court's dismissal notice. Douglas then filed a motion to reinstate on June 2, 2008, which was timely mailed on May 30, 2008. *See* Tex.R. Civ. P. 5, 165a(3). The motion was overruled by operation of law. *See* Tex.R. Civ. P. 165a(3). Douglas then brought this appeal.

*Douglas v. Amer. Title Co.*, No. 14–08–00676–CV, 2009 WL 3851674, at *1–2 (Tex. App.-Houston [14th Dist.] Nov. 19, 2009, no pet.) (memo. op.). The court considered and overruled Douglas's three issues complaining of the trial court's failure to conduct a dismissal hearing, to consider his motion to retain, or to conduct a hearing on his motion to reinstate, and it affirmed the trial court's order dismissing Douglas's 2007 suit against American Title as frivolous or malicious. *Id.* at *5.

Meanwhile, Douglas had filed in this Court, in appeal number 01–07–0358–CV—alluded to by the Fourteenth Court of Appeals in its November 19, 2009 opinion in *Douglas v. American Title Co.* as "pending"—an appeal from the judgment entered on remand of his 2004 suit against ATC. This Court's per curiam dismissal of Douglas's earlier 2004 suit against ATC for Douglas's failure to file the record issued on the same day as the Fourteenth Court of Appeals' dismissal of his 2007 suit against ATC—November 19, 2009—but not before Douglas had accumulated a docket sheet eleven pages long in his appeal of that 2004 case on remand in this Court alone, consisting of 84 recorded "events," including filings by Douglas, filing deadlines, notices sent to Douglas by the Court, and correspondence from Douglas to the Court.

The trial courts order in this case satisfies all the statutory requirements for the courts finding Douglas to be a vexatious litigant on its own motion. Thus, we hold that the trial court did not abuse its discretion in finding him to be a vexatious litigant. *See Douglas,* 196 S.W.3d at 879. Douglas has not contested the pre-filing order pursuant to section 11.101. We overrule Douglas's first and second issues, and we affirm that part of the trial courts judgment finding Douglas to be a vexatious litigant and requiring him to comply with statutory requirements in filing future cases as provided in Chapter 11 of the Civil Practice and Remedies Code.

## B. Dismissal Under Chapter 14, Texas Civil Practice & Remedies Code

In his third issue, Douglas contends the trial court abused its discretion when it dismissed his petition as frivolous, *i.e.,* as having no arguable basis in law, because, he contends, he properly stated a claim for bill of review.

Chapter 14 of the Texas Civil Practice and Remedies Code applies to an inmate's in propria persona claim in a suit in which an affidavit or unsworn declaration of inability to pay costs is filed by the inmate. *See* Tex. Civ. Prac. & Rem.Code Ann. § 14.002. Among several grounds on which a court may dismiss the suit are findings that the suit is frivolous or malicious, *i.e.,* the claims raised in the suit have no arguable basis in law or fact. *See id.* § 14.003(a)(2), (b)(2). Specifically, section 14.003 provides, in part:

(a) A court may dismiss a claim, either before or after service of process, if the court finds that:

(1) the allegation of poverty in the affidavit or unsworn declaration is false;

(2) the claim is frivolous or malicious; or

(3) the inmate filed an affidavit or unsworn declaration required by this chapter that the inmate knew was false.

(b) In determining whether a claim is frivolous or malicious, the court may consider whether:

(1) the claim's realistic chance of ultimate success is slight;

(2) the claim has no arguable basis in law or in fact;

(3) it is clear that the party cannot prove facts in support of the claim; or

(4) the claim is substantially similar to a previous claim filed by the inmate because the claim arises from the same operative facts.

*Id.* § 14.003(a), (b).

▆▆▆▆ Section 14.003 further provides that, in determining whether subsection 14.003(a) applies, the court "may" hold a hearing and, if it dismisses a claim brought by a person housed in a TDCJ facility, it "may notify [TDCJ] of the dismissal." *Id.* § 14.003(c)-(d). The trial court's failure to conduct a hearing on whether an inmate's suit is frivolous is not an abuse of discretion when the inmate has failed to demonstrate that there is evidence he would have presented had a hearing been held. *Hall,* 39 S.W.3d at 724. When the trial court does not hold a hearing, the issue before the appellate court is whether the trial court properly determined that the lawsuit had no arguable basis in law. *Presiado v. Sheffield,* 230 S.W.3d 272, 274 (Tex.App.-Beaumont 2007, no pet.).

In addition, section 14.004 of the Code provides:

(a) An inmate who files an affidavit or unsworn declaration of inability to pay costs shall file a separate affidavit or declaration:

(1) identifying each suit . . . previously brought by the person and in which the person was not represented by an attorney, without regard to whether the person was an inmate at the time the suit was brought; and

(2) describing each suit that was previously brought by:

(A) stating the operative facts for which relief was sought;

(B) listing the case name, cause number, and the court in which the suit was brought;

(C) identifying each party named in the suit; and

(D) stating the result of the suit, including whether the suit was dismissed as frivolous or malicious under Section 14.001 or Section 14.003 or otherwise.

(b) If the affidavit or unsworn declaration filed under this section states that a previous suit was dismissed as frivolous or malicious, the affidavit or unsworn declaration must state the date of the final order affirming the dismissal.

(c) The affidavit or unsworn declaration must be accompanied by the certified copy of the trust account statement required by Section 14.006(f).

Tex. Civ. Prac. & Rem.Code Ann. § 14.004.

Finally, section 14.006(f), referenced in section 14.004(c), provides:

(f) The inmate shall file a certified copy of the inmate's trust account statement with the court. The statement must reflect the balance of the account at the time the claim is filed and activity in the account during the six months preceding the date on which the claim is filed.

The court may request the department or jail to furnish the information required under this subsection.

*Id.* § 14.006(f). Section 14.006 also provides that a court may order an inmate who has filed a claim to pay court fees, court costs, and other costs, and it prescribes a method for assuring payment. *Id.* § 14.006(a)-(e). The court may dismiss the claim if the inmate fails to pay fees and costs assessed under the section. *Id.* § 14.006(h).

■■■ The standard of review of the dismissal of a lawsuit brought by an inmate who had filed an affidavit or declaration of inability to pay costs is abuse of discretion. *Thomas v. Knight,* 52 S.W.3d 292, 294 (Tex.App.-Corpus Christi 2001, pet. denied). To establish an abuse of discretion, the inmate must show that the trial court's action was arbitrary or unreasonable in light of all the circumstances in the case. *Id.* While dismissals of inmate litigation under chapter 14 are generally reviewed for an abuse of discretion, the question whether there was an arguable basis in law for an inmate's claims is reviewed de novo. *Scott v. Gallagher,* 209 S.W.3d 262, 266 (Tex.App.-Houston [1st Dist.] 2006, no pet.); *Sawyer v. Tex. Dep't of Crim. Justice,* 983 S.W.2d 310, 311 (Tex. App.-Houston [1st Dist.] 1998, pet. denied).

■■■ When an inmate does not comply with the affidavit requirements in filing an affidavit or unsworn declaration of inability to pay costs, the trial court is entitled to assume the suit is substantially similar to one previously filed by the inmate and, therefore, frivolous. *Thomas,* 52 S.W.3d at 295; *Hall,* 39 S.W.3d at 724; *Bell v. TDCJ–Inst. Div.,* 962 S.W.2d 156, 158 (Tex.App.-Houston [14th Dist.] 1998, pet. denied). This is so even when the inmate contends that defects in his affidavit could be cured with copies of his previous lawsuits, filed as exhibits. *Clark v.*

*Unit,* 23 S.W.3d 420, 422 (Tex.App.-Houston [1st Dist.] 2000, pet. denied). The description of previous suits must be contained a separate affidavit or declaration, and the court is not required to sift through numerous documents filed by the inmate to find the information specified by the statute. *Id.* An inmate's unsworn allegation in his petition for declaratory relief that he has not filed any previous lawsuit concerning the subject matter of the cause of action and has not previously filed any other civil actions in any court does not qualify as either an affidavit or an unsworn declaration satisfying the procedural requirements for civil inmate litigation, and thus, in such a case, the suit may be dismissed as frivolous. *Jackson v. TDCJ–Inst. Div.,* 28 S.W.3d 811, 814 (Tex. App.-Corpus Christi 2000, pet. denied).

■■■ An inmate's failure to file the affidavit or unsworn declaration relating to previous filings is mandatory in inmate litigation, and the failure to file the affidavit is grounds alone to dismiss the suit. *Amir–Sharif v. Mason,* 243 S.W.3d 854, 858 (Tex.App.-Dallas 2008, no pet.). The dismissal of a state prisoner's suit merely for failure to comply with the conditions set out in section 14.004 is not, however, a dismissal on the merits and is, therefore, generally a dismissal without prejudice. *Thomas,* 52 S.W.3d at 295.

■■■ To determine whether the trial court properly decided that there was no arguable basis in law for an inmate's suit filed with an affidavit or declaration of inability to pay costs, the court of appeals must examine the types of relief and causes of action the inmate pleaded in his petition to determine whether, as a matter of law, the petition stated a cause of action that would authorize relief. *Spurlock v. Schroedter,* 88 S.W.3d 733, 736 (Tex.App.-Corpus Christi 2002, no pet.); *Jackson,* 28

S.W.3d at 813. In reviewing a dismissal of a suit filed by an inmate for inability to pay costs, the appellate court is bound to take as true the allegations in the inmate's original petition. *Brewer v. Simental,* 268 S.W.3d 763, 770 (Tex.App.-Waco 2008, no pet.); *Jackson,* 28 S.W.3d at 813. The court should consider whether the suit was dismissed with prejudice, and, if it was, it should determine whether the prisoner's error could be remedied through more specific pleading; if it could, dismissal with prejudice was improper. *Thomas,* 52 S.W.3d at 296.

Here, Douglas filed a petition for a bill of review in the trial court and an unsworn declaration of inability to pay. There is no indication in the record that Douglas filed the affidavit required by section 14.004 of the Civil Practice and Remedies Code identifying and describing the suits he had filed in propria persona or the certified copy of his trust account statement required by sections 14.004(c) and 14.006(f) of the Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 14.004(c), 14.006(f). Therefore, the suit was, for that reason alone, subject to dismissal. *See Amir–Sharif,* 243 S.W.3d at 858; *Thomas,* 52 S.W.3d at 295; *Hall,* 39 S.W.3d at 724; *Clark,* 23 S.W.3d at 422; *Bell,* 962 S.W.2d at 158.

■ In considering the merits of Douglas's contentions, nevertheless, we reach the same conclusion as the trial court, namely that his suit was properly dismissed as frivolous and malicious.

■ In this case, Douglas has filed a bill of review seeking further review of the consolidated cases he filed in 2001 against the Joneses arising out of the matters that were the subject of his criminal conviction for theft and the bankruptcy court's subsequent finding that he defrauded the Joneses. A bill of review is an independent, equitable proceeding to set aside a judgment that, while not void on the face of the record, is no longer appealable or subject to a motion for new trial. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex.2003). Generally, a petitioner seeking to set aside a prior judgment by bill of review must plead and prove (1) a meritorious claim or defense, (2) that was not asserted due to fraud, accident, or wrongful act of an opponent or official mistake, (3) unmixed with any fault or negligence by the petitioner. *See id.* at 752. However, when the bill-of-review petitioner participates in the underlying suit, but was prevented from pursuing a motion for new trial or appeal because the district clerk failed to give notice of the judgment, the bill-of-review petitioner must establish a "meritorious ground of appeal" in lieu of a meritorious claim or defense. *Petro–Chem. Transp., Inc. v. Carroll,* 514 S.W.2d 240, 245–46 (Tex.1974); *Thompson v. Ballard,* 149 S.W.3d 161, 164 (Tex.App.-Tyler 2004, no pet.). A "meritorious ground of appeal" is one that might, and probably would, result in a reversal of the trial court's judgment. *Petro–Chem.,* 514 S.W.2d at 245; *Thompson,* 149 S.W.3d at 164.

Douglas had his appeal of his consolidated suits against the Joneses in the Fourteenth Court of Appeals in 2004 and allowed it to be dismissed for want of prosecution. The litigation history of Douglas's claims related to the Joneses and to his theft of their property that resulted in his conviction and sentence to life in prison, as well as numerous related claims, have been litigated by Jones in at least 22 directly and indirectly related causes of action to date. The trial court made the requisite findings to support dismissal of this suit under section 14.003(a) as a frivolous or malicious suit. *See id.* § 14.003(a)-(b) (listing factors to consider in determining frivolousness, namely, slight realistic chance of ultimate success

of the claim, lack of arguable basis in law or in fact, inability of party to prove facts in support of claim, or claim's substantial similarity to previous claim filed by inmate because arising from same operative facts).

Our review of the record substantiates the trial court's findings that Douglas's suit is frivolous and malicious. Douglas has prosecuted his petition for a bill of review in the trial court and this Court since 2006, despite repeated prior rulings adverse to him in the consolidated cases against the Joneses and integrally related cases, despite his allowing his first appeal of the consolidated cases to languish for two years in the Fourteenth Court of Appeals without prosecution, despite never serving the Joneses with his 2006 petition for bill of review, despite the trial court's 2008 ruling finding him to be a vexatious litigant (as he had previously been found to be a vexatious litigant in other, related litigation), despite failing to serve the Joneses with his notice of appeal of the dismissal of his bill of review, and despite his failing to file the affidavit of previous filings and statement of his trust account required of all inmates who have filed an affidavit or unsworn declaration of inability to pay, as he has.

On this record, we can discern no basis on which Douglas could establish a meritorious ground of appeal. *See Petro–Chem.*, 514 S.W.2d at 245. We, therefore, affirm the trial court's judgment dismissing Douglas's petition for bill of review as frivolous and malicious.

### Judicial Misconduct

In his fourth and final issue on appeal, Douglas contends that the trial court judge was biased against him, thus depriving him of his constitutional right to have his suit decided by a fair and impartial judge. Douglas contends that trial court's bias

against him is shown by its order that the Executive Director of TDCJ and to the Chair of the Texas Board of Pardons and Paroles be sent certified copies of its order dismissing his suit as frivolous, malicious, and without basis in law or fact.

▮ To reverse a judgment on the ground of judicial misconduct, we must find judicial impropriety coupled with probable prejudice to the complaining party. *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex.1986); *Erskine v. Baker*, 22 S.W.3d 537, 539 (Tex.App.-El Paso 2000, pet. denied); *Metzger v. Sebek*, 892 S.W.2d 20, 39 (Tex.App.-Houston [1st Dist.] 1994, writ denied). We examine the entire record to determine whether these factors are present. *Metzger*, 892 S.W.2d at 39.

Section 14.003(e) of the Civil Practice and Remedies Code expressly provides that "[a] court that dismisses a claim brought by a person housed in a facility operated by or under contract with [TDCJ] may notify [TDCJ] of the dismissal." TEX. CIV. PRAC. & REM.CODE ANN. § 14.003(e). The record does not indicate why the trial court also directed that the Texas Board of Pardons and Paroles be notified of the dismissal, and we will not speculate as to the trial court's actions in the absence of any indication that Douglas could have brought forth evidence to establish the trial court's bias against him or the harm caused him by this notice. Rather, Douglas's "blizzard of unsuccessful state and federal civil litigation brought ... against the complainants, prosecutors, defense attorneys, witnesses, judges, and other individuals and companies directly or indirectly involved in his criminal convictions, spanning seven years and, as evinced by the instant lawsuit, continuing into the present," argue against Douglas's ability to show judicial bias against him. *See Douglas v. Haynes*, No. H–09–0598, 2009 WL 1871964, at *1 (S.D.Tex. June 26, 2009).

Finding no evidence to support Douglas's contention of judicial impropriety, we overrule his final issue.

## CONCLUSION

We affirm the trial court's order finding appellant Ralph O. Douglas to be a vexatious litigant under Chapter 11 of the Texas Civil Practice and Remedies Code and requiring that he satisfy the statutory filing requirements for vexatious litigant prescribed by Chapter 11 in all future cases. We likewise affirm the trial court's order dismissing Douglas's suit under Chapter 14 of the Code as frivolous and malicious.

Justice SHARP, concurring and dissenting.

JIM SHARP, Justice, concurring and dissenting.

I concur in the majority's opinion as to the trial court's dismissal of Mr. Douglas' petition under Chapter 14, but find the majority's holding on the vexatious litigant issue to be incorrect. I would hold that the trial court abused its discretion when it declared Douglas a vexatious litigant because the governing statute, a rather explicit, specific, itemized, and particularized statute, does not authorize the trial court to raise the issue sua sponte.[1] Accordingly, I would reverse the judgment of the trial court with respect to the vexatious litigant finding and related pre-filing order. I would also overrule Douglas' judicial misconduct claim, but on a different basis.

### Vexatious Litigant Statute

In three subchapters, Chapter 11 of the Texas Civil Practice and Remedies Code sets forth the statutory scheme for dealing with vexatious litigants:

- "General Provisions" (Subchapter A, § 11.001);
- "Vexatious Litigants" (Subchapter B, §§ 11.051–.057); and
- "Prohibiting Filing of New Litigation" (Subchapter C, §§ 11.101–.104).

Subchapter B sets forth the *exclusive* provisions authorizing a trial court to declare a plaintiff a vexatious litigant, pursuant to which a *defendant* may move the court for an order declaring the plaintiff a vexatious litigant within ninety days of filing its original answer in the case.[2] The court must then stay the proceeding, notice the parties, and hold an evidentiary hearing on the matter.[3] After the hearing, if the court finds that "the defendant [has] show[n] . . ." certain expressly required facts, the court may then declare the plaintiff a vexatious litigant (and if so declared, must then order the plaintiff to furnish security for the benefit of the moving defendant, non-compliance with which, requires dismissal of the underlying litigation).[4]

Having declared the plaintiff a vexatious litigant pursuant to Subchapter B, the court may *then,* either on the motion of a party or acting sua sponte, enter a pre-filing order prohibiting the vexatious litigant from filing any new litigation without permission from the local administrative judge pursuant to Subchapter C. Section 11.101 of Subchapter C states in its entirety:

---

1. *See* TEX. CIV. PRAC. & REM.CODE ANN. §§ 11.001–.056 (Vernon 2002).

2. *Id.* at § 11.051.

3. *See id.* at §§ 11.052 (staying proceeding) and 11.053 (notice and hearing).

4. *Id.* at §§ 11.054–.056.

**§ 11.101. PREFILING ORDER; CONTEMPT.**

(a) A court may, on its own motion or the motion of any party, enter an order prohibiting a person from filing, in propria persona, a new litigation in a court in this state if the court finds, *after notice and hearing as provided by Subchapter B,* that:

    (1) the person is a vexatious litigant; and

    (2) the local administrative judge of the court in which the person intends to file the litigation has not granted permission to the person under Section 11.102 to file the litigation.

(b) A person who disobeys an order under Subsection (a) is subject to contempt of court.

Tex. Civ. Prac. & Rem.Code Ann. § 11.101 (Vernon 2002) (emphasis added).

Read in its entirety (rather than considering section 11.101 in isolation), Chapter 11 yields an understanding that it authorizes the trial court to issue a pre-filing order *only after* its vexatious litigant finding pursuant to Subchapter B.[5] The only notice and hearing provisions in Subchapter B are set forth in section 11.053, and section 11.053 is contingent upon the defendant's timely request for a vexatious litigant order pursuant to section 11.051. Thus, under the plain language of section 11.051, the defendants request within ninety days of filing the original answer is a statutory prerequisite for any vexatious litigant declaration.[6]

In the present case, Douglas' petition for bill of review was dismissed prior to service of citation, thus the named defendants were never provided notice to enter an appearance in this suit, much less file a section 11.051 motion with the court. Accordingly, I would hold that the trial court abused its discretion when it declared Douglas a vexatious litigant because the trial court did not comply with the mandatory statutory scheme. For this reason, I would reverse the judgment of the trial court with respect to the vexatious litigant finding and related pre-filing order.

The majority portrays my reading of the vexatious litigant statute as violative of statutory construction doctrines because, they purport, it fails to consider section 11.101, is "directly contrary" to that section's plain language, and renders the language of that section "superfluous."

---

5. *Id.* at § 11.101 (stating court may issue pre-filing order "if the court finds, *after notice and hearing as provided in Subchapter B [sections 11.051–.057],* that ... the person is a vexatious litigant") (emphasis added); *see generally id.* at § 11.054 ("Criteria for Finding Plaintiff a Vexatious Litigant").

6. *See Dishner v. Huitt–Zollars, Inc.,* 162 S.W.3d 370, 377 (Tex.App.-Dallas 2005, no pet.) (holding trial court abused its discretion in declaring appellant vexatious litigant because section 11.051 motion filed outside ninety-day time period); *In re Marriage of Grossnickle,* 115 S.W.3d 238, 252 (Tex.App.-Texarkana 2003, no pet.) (stating that "the 'vexatious litigant statute applies only when [a section 11.051 motion is] filed within ninety days after date on which a defendant files his or her original answer' "); *Spiller v. Spiller,* 21 S.W.3d 451, 454 (Tex.App.-San Antonio 2000, no pet.) (holding section 11.051 motion filed outside ninety-day period was untimely); *cf. Scott v. TDCJ,* No. 13–07–00718–CV, 2008 WL 4938265, at *3, 5 (Tex.App.-Corpus Christi Nov. 20, 2008, no pet.) (holding trial court abused its discretion by declaring inmate vexatious litigant because statute did not authorize court to raise issue sua sponte). The majority regards *Dishner, Spiller,* and *Grossnickle* as inapplicable because they are factually distinguishable from the instant case since the defendants in these cases all appeared and sought vexatious litigant declarations. As discussed later, the underlying reasoning and analysis in these cases is nonetheless pertinent to this appeal. *See infra* pp. 298–99 & n. 9.

Majority opinion, pp. 284–85. On the contrary, that section's authorization to issue a pre-filing order presupposes a vexatious litigant declaration by the court in that it merely authorizes the trial court to issue a pre-filing order *once it has declared* a litigant vexatious pursuant to Subchapter B. It does not—as the majority and trial court contend—authorize the trial court to make the initial vexatious litigant declaration. Viewing Chapter 11 in its entirety, it is apparent that the trial court's authority to make such a declaration is governed by Subchapter B, not Subchapter C. My reading, which pertains exclusively to the trial court's authority to declare a litigant vexatious under Subchapter B, does not conflict with the trial court's authority to issue a pre-filing order under Subchapter C's section 11.101, much less render section 11.101 superfluous or ineffective.[7]

Indeed, the majority's reading could render other portions of Chapter 11, *e.g.*, section 11.051, superfluous. Such an interpretation is also logically inconsistent with the law of at least three of our sister courts.[8] Section 11.051 requires a defendant to move the court for an order declaring the plaintiff a vexatious litigant within ninety days of filing its original answer. Why would the Legislature impose a time limit on a defendant's ability to request a vexatious litigant order, if the court were able issue such a declaration, on its own initiative, at any time? Given that a court of appeals must affirm a judgment on any legal basis supported by the record, how could a trial court have erred or abused its discretion when it declared a party a vexatious litigant simply because the issue was raised outside section 11.051's ninety-day period, if the court was able to raise the issue sua sponte at any time?[9] If the trial court may, as the majority contends, declare a litigant vexatious *sua sponte* at any time, then section 11.051's ninety-day deadline is effectively superfluous.

In addition to these published opinions, both the Corpus Christi and Fourteenth Courts of Appeals have reached similar results in *Scott v. Texas Department of Criminal Justice*[10] and *Akinwamide v. Transportation Insurance Company*.[11] The majority's criticism of *Scott* and *Akin-*

7. *See* TEX. GOV'T CODE ANN. § 311.021(2) (Vernon 2005) (requiring courts construe statutes based on presumption that Legislature intended entire statute to be effective); *City of Marshall v. City of Uncertain,* 206 S.W.3d 97, 105 (Tex.2006) (citing *City of San Antonio v. City of Boerne,* 111 S.W.3d 22, 29 (Tex.2003)) (stating courts should avoid construing statutes in manner that renders any part of statute meaningless or superfluous).

8. *See Dishner,* 162 S.W.3d at 377; *Spiller,* 21 S.W.3d at 454; *Grossnickle,* 115 S.W.3d at 252.

9. *Compare* Majority opinion, p. 291 (affirming trial court order declaring appellant vexatious litigant, despite lack of timely section 11.051 motion) *with Dishner,* 162 S.W.3d at 377 (reversing trial court order declaring appellant vexatious litigant because court failed to comply with Chapter 11's statutory scheme), *Spiller,* 21 S.W.3d at 454 (same), and *Grossnickle,* 115 S.W.3d at 252 (holding trial court did not err in failing to find party vexatious litigant because defendant did not file section 11.051 motion within ninety-day period).

10. No. 13–07–00718–CV, 2008 WL 4938265, at *3, 5 (Tex.App.-Corpus Christi Nov. 20, 2008, no pet.) (mem. op.) (holding trial court abused its discretion by declaring inmate vexatious litigant because statute did not authorize court to raise issue sua sponte).

11. No. 14–06–01054–CV, 2008 WL 660303, at *4 (Tex.App.-Houston [14th Dist.] Mar. 11, 2008, pet. denied) (mem. op.) (holding trial court abused its discretion by declaring plaintiff vexatious litigant because defendants' section 11.051 motion was untimely and court did not have "inherent power" to issue such a declaration).

*wamide* on the grounds that neither opinion "mentioned or even considered section 11.101" is not just inapposite but ironic as those opinions addressed the trial court's authority to declare a litigant vexatious under Subchapter B *not* the trial court's authority to issue a pre-filing order under Subchapter C (§§ 11.101–.104). Majority opinion, p. 284. Thus, *Scott's* or *Akinwamide's* silence as to section 11.101 was dictated by its inapplicability.

The majority also asserts that the *Akinwamide* court's discussion of a trial court's "inherent power" to prevent vexatious litigation is dictum because the court did not need to reach that question in order to resolve the issues presented to it. In *Akinwamide*, the trial court declared the appellant/plaintiff a vexatious litigant after the appellees/defendants filed a section 11.051 motion.[12] On appeal, the appellant argued that the trial court abused its discretion when it declared him a vexatious litigant because the appellees' motion was untimely.[13] Citing to *University of Texas v. Morris*[14] and *Birdo v. Holbrook*,[15] the appellees countered that even if the motion did not comply with the statutory time limit, the court's declaration was nonetheless proper in light of the court's "inherent power" to protect judicial resources and prevent vexatious litigation.[16] Noting that both *Morris* and *Birdo* pre-dated the vexatious litigant statute, and that although both cases "stand for the proposition the courts have the inherent power to apply certain restrictions on *pro se* plaintiffs in order to protect judicial resources, but

they do not stand for the proposition the courts can inherently declare a plaintiff a vexatious litigant," the court of appeals rejected the appellees' "inherent power" argument and held that the trial court abused its discretion when it declared appellant a vexatious litigant because defendants' motion was untimely.[17]

The *Akinwamide* court's discussion of a trial court's "inherent power" to prevent vexatious litigation in that case can hardly be described as dictum. The court's rejection of the appellees' "inherent power" argument was a necessary step in light of the fact that a court of appeals must affirm the judgment of a trial court if it can be upheld on any legal theory that finds support in the evidence. *See In re W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984). If the appellees' "inherent power" argument had been correct, the court of appeals would have had no choice but to affirm the trial court's order declaring the appellant a vexatious litigant.

According to the majority, my interpretation not only denies courts their "inherent right to protect judicial resources from waste in frivolous and vexatious litigation," but also results in an unreasonable construction of the statute that goes against the Legislature's intent. In support of this claim, the majority cites to *Morris*[18] and *Birdo*,[19] two pre-Chapter 11 cases that held that courts have equitable power to prevent vexatious litigation. As previously discussed, this argument has already been rejected by one of our sister courts in *Akinwamide*.[20] As the *Akinwamide* court

12. *Id.* at *1.

13. *Id.* at *3.

14. 162 Tex. 60, 344 S.W.2d 426, 428 (1961).

15. 775 S.W.2d 411, 412–13 (Tex.App.-Fort Worth 1989, writ denied).

16. 2008 WL 660303, at *4.

17. *Id.*

18. 162 Tex. at 62, 344 S.W.2d at 428.

19. 775 S.W.2d at 412–13.

20. 2008 WL 660303, at *4.

correctly pointed out, both *Morris* and *Birdo* pre-date the Legislature's enactment of Chapter 11.

According to the majority, Chapter 11 was intended to "make it possible for courts to control their dockets ... while, at the same time, providing protections for litigants' constitutional rights to an open court when they have genuine claims that can survive the scrutiny of the administrative judge and the posting of security to protect defendants." [21] Majority opinion, p. 284. On the contrary, there is no indication that the Legislature enacted Chapter 11 in order to "make it possible for courts to control their dockets." The vexatious litigant statute was enacted in order to give the courts an additional tool to use as a deterrent to the filing of vexatious litigation; it was not intended to give the courts the type of unbridled authority advocated by the majority. [22] Had the Legislature wanted to expand upon or incorporate the "inherent powers" principle previously espoused by both *Morris* and *Birdo*, it certainly could have done so. Instead the Legislature chose to enact a scheme in which a party's request for a vexatious litigant declaration is a statutory prerequisite for any such declaration. [23] Further, such a request triggers the trial court's obligation to order the plaintiff to furnish security for the benefit of the moving defendant—assuming the court

finds the plaintiff to be a vexatious litigant after notice and hearing. [24]

Although I share the majority's frustration with the potential for judicial inefficiencies attendant to inmate litigation that may be considered frivolous, the statute speaks for itself and it is the Legislature's function to amend it, not this Court's to gloss over it or write around it.

### Judicial Misconduct

Although I agree with the majority's disposition of Douglas' judicial misconduct claim, I disagree with the reasoning.

In his final issue on appeal, Douglas contends that the trial court judge was biased against him, thus depriving him of his constitutional right to have his suit decided by a fair and impartial judge. Specifically, Douglas contends that the trial court's repeated use of the terms "retaliate" and "harassing the defendants" to describe his conduct in its May 23, 2008 order, coupled with the fact that the trial court directed the clerk to send a copy of the order to the Texas Board of Pardons and Paroles, evidenced the trial court judge's intent to "poison and influence the board's decision" regarding his parole eligibility.

To reverse a judgment on the ground of judicial misconduct, we must find judicial impropriety coupled with probable prejudice to the complaining party. [25] We exam-

---

**21.** Ironically, the majority's interpretation would nonetheless, effectively strip away these very constitutional protections by allowing trial courts to declare a litigant vexatious without regard to the statutory scheme enacted by the Legislature.

**22.** *See generally* HOUSE COMM. ON CIVIL PRACTICES, BILL ANALYSIS, Tex. H.B. 3087, 75th Leg., R.S. (1997) (stating purpose of Chapter 11 to "curb vexatious litigation by requiring plaintiffs found by a court to be 'vexatious' to post security for costs before proceeding with a lawsuit").

**23.** TEX. CIV. PRAC. & REM CODE ANN. § 11.05l; *see Dishner,* 162 S.W.3d at 377; *Spiller,* 21 S.W.3d at 454.

**24.** *See* TEX. CIV. PRAC. & REM.CODE ANN. § 11.05l.

**25.** *Silcott v. Oglesby,* 721 S.W.2d 290, 293 (Tex.1986); *Erskine v. Baker,* 22 S.W.3d 537, 539 (Tex.App.-El Paso 2000, pet. denied); *Metzger v. Sebek,* 892 S.W.2d 20, 39 (Tex.App.-Houston [1st Dist.] 1994, writ denied).

ine the entire record to determine whether these factors are present.[26]

Although the inflammatory language of the trial court's order and the extra-judicial action of sending a copy to the Board of Pardons and Paroles were unwarranted, we need not reach the issue of whether the court's statements or actions constituted judicial impropriety because the record does not reflect that Douglas was prejudiced by the alleged bias of the trial court. The trial court's dismissal of Douglas' petition pursuant to Chapter 14 was proper, and, to the extent that Douglas may have been harmed by copy of the order being sent to the Board of Pardons and Paroles, this would not, in and of itself, warrant reversal of the court's otherwise proper judgment.[27] Accordingly, I would overrule Douglas' final issue on this basis.

---

26. *Metzger,* 892 S.W.2d at 39.

27. *See Erskine,* 22 S.W.3d at 540 (stating reversal of judgment should not be ordered unless there is showing of impropriety which resulted in rendition of improper judgment).