Marjory S. ERSKINE and W.S. Erskine, Appellants,

v.

Vanessa BAKER and Dennis J. Baker, Appellees.

No. 08–99–00035–CV.

Court of Appeals of Texas, El Paso.

March 23, 2000.

Gerald K. Fugit, Odessa, for Appellant.

Patrick S. Gerald, Holly Beth Williams, Turner & Davis PC, Midland, for Appellee.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

## *O P I N I O N*

RICHARD BARAJAS, Chief Justice.

This is an appeal from a jury verdict entered against Appellants. Appellants contend that the verdict should be overturned based on improper *ex parte* communications which took place between the Honorable Ray L. McKim, the visiting trial judge, and counsel on one occasion, and a private telephone conversation placed by Judge McKim to a witness during the pendency of the underlying action. For reasons stated below, we affirm the judgment.

## I. *SUMMARY OF THE EVIDENCE*

On April 24, 1992, Vanessa Baker and Dennis Baker, ("Baker"), filed suit against Marjory S. Erskine and W.S. Erskine, ("Erskine"), for recovery in a boundary line dispute. In December of the same year, Baker added a cause of action for nuisance associated with Erskine's use of their property to rehabilitate certain wildlife. On January 30, 1998, Erskine filed a counterclaim for conversion, conspiracy, trespass, intentional infliction of emotional distress, adverse possession, and tortious interference with business.

The case was conducted in front of a jury during the latter part of August 1998. On August 26, 1998, Mr. Fugit, trial counsel for Erskine, raised the following objection:

Your Honor, I was not in here at the time. I had stepped out and been talking to another person. My client tells me that at approximately 2:27, you and Mr. Gerald [counsel for Baker] were having a conversation about Exhibit 51, and that you pointed out to Patrick Gerald something and said, 'You should use that in your closing argument and that this is how—basically how you contradict what has already been said.'—I don't know whether it happened. I was not here at the time. But if it did happen, Your Honor, I respectfully move for a mistrial in this cause because you are communicating with Mr. Patrick

Gerald about something that was totally irrelevant and should never have been brought up at all. I have to tell you very frankly, judge, I was not here at the time. I did not hear it. But Mrs. Erskine has told me this, and that there was a conversation that ensued, and it dealt with Plaintiff's Exhibit 51, which is—has been introduced by the plaintiff. And I respectfully request a mistrial at this time, and that no conversation in regard to this case with the Court be held without my being present, and also Mr. Gerald being present.

Judge McKim then responded as follows:

Mr. Fugit, the Court would certainly not contradict your client in the sense that I asked the bailiff ... I asked would he mind bringing it [an exhibit] up here. And in addition to our golf scores—Mr. Gerald and I—I pointed out to him that it's clearly on the exhibit that a certain 10 feet had been returned to the owners. And I merely said to Mr. Gerald, 'Did I miss that? Did Mr. Schumann [witness for plaintiff] say anything about that?' And he said, 'No, I don't think he did.' And I said, 'Well, you might mention that in closing.' And that's the extent of it. I am not the attorney for plaintiff or defendant in this case, and Mr. Patrick is certainly free to do whatever he wants to in the way of his presentation of the case.

Then, on August 27, 1998, after requesting a mistrial for the incident described above, Mr. Fugit again sought a mistrial based on a phone call Judge McKim placed to Mr. Schumann, the plaintiff's witness. Judge McKim responded as follows:

Well, Mr Schumann—as he passed my desk, I asked him about a call on the Plaintiff's Exhibit—oh, the one done by your outfit. 51? No. 25, I believe it is, isn't it? And I said, 'That call, as marked there, could not be right, could it?' He says, 'I'll check it.' And so then I got a note from him, and I called him. And he said, 'No. That's right. That was correctly put down there as being

south 15 degrees and no minutes, no seconds west.' And I said, 'Thank you,' and that's it.... Court can inquire whatever. The jury was not informed. Nothing was done in that regard ...

At the conclusion of the trial, the jury determined that Baker's surveys, represented by Schumann's exhibits, represented the correct boundary between the properties. The jury also determined that Baker committed none of the violations alleged by Erskine in Erskine's counterclaim. Erskine now brings this appeal.

## II. *DISCUSSION*

■ The single issue for review is whether Judge McKim's *ex parte* communications to attorney Gerald and the private telephone conversation made to the witness Schumann were so improper as to require us to reverse the jury's verdict. Appellant argues that although he was unable to locate a case exactly on point, reversal is warranted because "the judge became a litigant."

■ To reverse a judgment on the ground of judicial misconduct, we must find judicial impropriety, i.e., error, coupled with probable prejudice to the complaining party. *Pitt v. Bradford Farms*, 843 S.W.2d 705, 706 (Tex.App.—Corpus Christi 1992, no writ); *Silcott v. Oglesby*, 721 S.W.2d 290, 293 (Tex.1986); *see also* TEX.R.APP. P. 44.1.

■ It has been noted that an independent and honorable judiciary is indispensable to justice in our society. In that regard, a judge should participate in establishing, maintaining, and enforcing, and should observe high standards of conduct so that the integrity and independence of the judiciary is preserved. *See In re Thoma*, 873 S.W.2d 477, 496 (Tex.Rev. Trib.1994) (citing TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, CANON 1, Amended to April 1, 1988, reprinted at TEX.GOV'T CODE ANN., TITLE 2, SUBT. G, APPENDIX B (Vernon 1988)). It is clear then, that a judge should respect and comply with the law and should conduct himself or herself at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary. TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, CANON 2 A. In that regard, a judge must make every effort to avoid conveying or permitting others to convey the impression that they are in a special position to influence the judge. TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, CANON 2 B. The Texas Code of Judicial Conduct further provides that, except as authorized by law, a judge shall not directly or indirectly initiate, permit, or consider *ex parte* or other private communications concerning the merits of a pending or impending judicial Proceeding. TEXAS SUPREME COURT, CODE OF JUDICIAL CONDUCT, CANON 3 B(8). *Ex parte* communications are " 'those that involve fewer than all of the parties who are legally entitled to be present during the discussion of any matter. They are barred in order to ensure that "every person who is legally interested in a proceeding [is given the] full right to be heard according to law." ' " *Thoma*, 873 S.W.2d, at 496 (citing JEFFREY M. SHAMAN, ET AL., JUDICIAL CONDUCT AND ETHICS, § 6.01 at 145 (1990)). The principle underlying such prohibition against *ex parte communication*, as it regards the disposition of matter pending in the judicial system, is quite simple: the disposition of judicial matters is the public's business and ought to be conducted in public in open court. *See Thoma*, 873 S.W.2d, at 496.

■ As further noted in *Thoma:*
Judiciary has no special privilege to suppress or conduct in private proceedings involving adjudication of causes before it; in fact, such secrecy frustrates the judiciary's responsibility to promote and provide fair and equal treatment to all parties. Individual judges are charged with task of adjudicating claims in manner that protects the rights of both parties....
*Thoma*, 873 S.W.2d, at 477.

■ Nonetheless, given the above admonitions established in *In re Thoma*, a

judge is necessarily allowed discretion in expressing himself while controlling the trial of a case. Reversal of a judgment should not be ordered unless there is a showing of impropriety, coupled with probable prejudice, and the rendition of an improper verdict. *Texas Employers Insurance Association v. Draper*, 658 S.W.2d 202, 209 (Tex.App.—Houston [1st Dist.] 1983, no writ) (citing *Sands v. Cooke*, 368 S.W.2d 111 (Tex.Civ.App.—San Antonio 1963, no writ); and *Trinity Universal Ins. Co. v. Jolly*, 307 S.W.2d 843 (Tex.Civ.App.—Austin 1957, writ ref'd n.r.e.)).

The record in the instant case is clear that *ex parte* communications were conducted between Judge McKim and counsel Gerald. The record additionally establishes that after the witness Schumann was called to testify, but during the pendency of the underlying action, Judge McKim mysteriously placed a telephone call to the witness Schumann. The record is silent however, as to the precise content of the *ex parte* communication, or the content of the telephone conversation between Judge McKim and the witness. To the extent, however, that both instances did in fact occur and are firmly established in the record, we find such conduct to be error. At the very least, Judge McKim's conduct gives the appearance of impropriety, and is to be condemned. Moreover, Judge McKim's private communications with both counsel Gerald and witness Schumann, during the pendency of the underlying action, serves to undermine the public's right to evaluate whether justice is being done and removes an important incentive to the efficient resolution of the case.

■ Having found that Judge McKim's private communications during the course of the proceedings constituted error, we now turn to whether such error was harmful. In so doing, we examine the record as a whole to determine whether the trial court's impropriety harmed Appellant. *Pitt*, 843 S.W.2d at 707; *Brown v. Russell*, 703 S.W.2d 843, 847 (Tex.App.—Fort Worth 1986, no writ).

We have examined the entire record, which is a partial record, and simply find that Appellants have failed to demonstrate the manner in which Judge McKim's comments may have resulted in the rendition of an improper judgment. We may not reverse a judgment absent such a showing. *See Texaco, Inc. v. Pennzoil, Co.*, 729 S.W.2d 768, 810 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), *cert. dism'd*, 485 U.S. 994, 108 S.Ct. 1305, 99 L.Ed.2d 686 (1988). Accordingly, we overrule Appellants' single point of error.

Having overruled Appellants' sole point of error, we affirm the judgment of the trial court.