COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



WESLEY FREEMAN SMALLWOOD, §

Appellant, §

v. §

THE STATE OF TEXAS, §

Appellee. §

§

No. 08-12-00215-CR

Appeal from the

196th District Court

of Hunt County, Texas

(TC#27738)

## O P I N I O N

A jury convicted Appellant Wesley Freeman Smallwood of continuous sexual abuse of a young child and sentenced him to twenty-five years' confinement. On appeal, Appellant raises four issues for our review. We affirm.

## BACKGROUND

Appellant is the step-grandfather of H.M., the complainant. Appellant was married to Vickie, H.M.'s maternal grandmother. In July 2009, H.M. was seven years old. On July 20, 2009, H.M. went to the hospital to have a SANE exam after she told her mother, Paula, that Appellant touched her in her private area. After conducting an investigation, Roger Seals, a criminal investigator with the Hunt County Sheriff's Office, obtained a warrant for Appellant's

arrest.   Appellant was subsequently indicted for the continuous sexual abuse of a young child.  *See* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014).

At trial, the evidence established that prior to the July 2009 incident, H.M. and her siblings frequently stayed overnight at Vickie and Appellant's house.   H.M. called Appellant "pawpaw." H.M. loved going to her grandparents' home and H.M.'s grandparents loved having the kids over. H.M. went to her grandparents' home every other weekend and would stay until Sunday.   The last time H.M. talked to Appellant or went over to his home was when she made an outcry to Vickie.[1]

Julia Crouch, a sexual-assault nurse examiner (SANE), testified that she conducted a SANE exam on H.M. at a hospital in Hunt County on July 20, 2009.   Nurse Crouch explained she follows certain procedures when talking with child victims and asks them questions in order to obtain information needed to treat the victim.

According to Nurse Crouch, H.M. complained that she had been touched on her tee-tee and butt.   H.M. described her tee-tee as her vagina.   The perpetrator used his hands to touch H.M. Nurse Crouch did not observe any physical trauma or injury to H.M.'s vaginal area.   Nurse Crouch testified that a lack of injury was very common especially with children.   Nurse Crouch's report was admitted in evidence over Appellant's objections.

Holly Robinson, a forensic interviewer with the Hunt County's Children's Advocacy Center (CAC), testified that she conducted a child forensic interview with H.M. on July 24, 2009. H.M. told Robinson that her pawpaw abused her.   Specifically, H.M. reported that her pawpaw rubbed her leg and touched the inside of her tee-tee and the outside of her butt with his hands. When Robinson asked H.M. how many times this occurred, H.M. responded that it happened more than twenty times.   H.M. stated that it always happened at her pawpaw's house in the living room.

---

[1]  By the time of trial, Vickie had passed away.

Robinson did not talk to H.M. about each of the twenty times Appellant touched H.M. Robinson explained it was difficult for a child to talk about each time if there were several incidents of abuse. Robinson primarily discussed the last time Appellant touched H.M. When H.M. was asked if it had happened before, H.M. talked about the other times and disclosed that the same things that happened before were the same things that happened the last time. During her interview with Robinson, H.M. did not provide any specific references that would allow Robinson to pinpoint when the other twenty instances of abuse occurred. A recording of Robinson's interview with H.M. and her notes from that interview were admitted into evidence without objection.

As part of his investigation, Officer Seals interviewed Appellant, Paula, and Vickie. After H.M.'s CAC interview, Officer Seals went to Appellant's residence in Caddo Mills, Texas, on September 3, 2009, to discuss the allegations against him. Officer Seals testified that while he questioned Appellant, Appellant avoided his questions and was misleading. Appellant admitted to sitting in the living room on the recliner with H.M. and that his hands were around her. Appellant denied the allegations made by H.M.

Officer Seals recalled Appellant stating that "if [Appellant] did do it, he didn't remember it. If it happened, he didn't remember." Officer Seals observed Appellant displayed signs of deception. Officer Seals later obtained an arrest warrant for Appellant. An audio recording of Appellant's interview with Officer Seals was admitted into evidence without objection.

At the time of trial, H.M. was ten years old. H.M. testified that the last time she talked to her pawpaw was when she was at his house sitting on the side of the chair, and he put his hand

3

underneath her underwear and started rubbing the inside of her tee-tee.[2]   H.M. could not recall the specific date and stated that it was a long time ago and that she was at her grandmother's house. When asked how she felt when Appellant did that, she stated that she did not feel that good.   After this incident, H.M. went to her mom's house and then to the hospital.   H.M. told her mother that her pawpaw put his fingers inside of her tee-tee.

When asked if this ever happened any other time besides the incident she had described, H.M. answered, "No."   She stated that before her pawpaw touched her in her tee-tee, he would use his hands to touch her butt cheeks and pull them apart when he gave her piggyback rides. However, on re-direct examination, H.M. testified that she remembered stuff better back then rather than today, and stated that it was hard for her to remember stuff from a long time ago.

Paula testified that she learned of the incident involving her daughter when Vickie called her.   After Vickie brought H.M. home, H.M. told Paula that Appellant touched her in her tee-tee. H.M. was then taken to the hospital where she was examined by a nurse.   After that night, Paula's mother noticed H.M. was shyer.   H.M. also appeared to be upset the night of the incident.

## DISCUSSION

In Issue One, Appellant argues the evidence is legally insufficient to support his conviction of continuous sexual abuse of a young child.   In Issues Two and Three, Appellant complains that Section 21.02 of the Texas Penal Code is unconstitutional on its face.   In Issue Four, Appellant contends a reversal in his case is required because the State and trial court engaged in ex parte communications concerning Appellant's motion for directed verdict.

### Legal Sufficiency

In Issue One, Appellant contends the evidence is insufficient to show beyond a reasonable

---

[2] H.M. explained that she used her tee-tee to pee.

doubt that two or more acts of sexual abuse occurred during a period that was 30 days or more.

*Standard of Review*

In determining the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). The jury is the sole judge of the weight and credibility of the witnesses. *Brooks*, 323 S.W.3d at 899. It is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). It is our duty to determine if the necessary inferences are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Id*. at 16-17. We do not overturn a verdict unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State,* 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The standard of review is the same for both direct and circumstantial evidence cases. *Geesa v. State*, 820 S.W.2d 154, 158 (Tex. Crim App. 1991), *overruled on other grounds, Paulson v. State*, 28 S.W.3d 570 (Tex. Crim. App. 2000).

**Continuous Sexual Abuse of Young Child**

A person commits the offense of continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" and, "at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age." TEX. PENAL CODE ANN. § 21.02(b) (West Supp. 2014). To prove the statutory offense of continuous sexual abuse of a child, the State must establish Appellant: (1) committed two or more acts of sexual abuse; (2) over a span

5

of thirty days or more; (3) against H.M.; and (4) that at the time of the sexual abuse Appellant was seventeen years of age or older and H.M. was younger than fourteen years of age. *Williams v. State*, 305 S.W.3d 886, 889 (Tex.App. – Texarkana 2010, no pet.); *see* TEX. PENAL CODE ANN. § 21.02 (West Supp. 2014).

The offense of continuous sexual abuse of a young child does not require that the exact dates of the abuse be proven. *Brown v. State*, 381 S.W.3d 565, 574 (Tex.App. – Eastland 2012, no pet.). However, the offense requires that there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration. *Id*. at 574. A jury need not agree unanimously on which of the specific acts of sexual abuse the actor committed or the exact dates those acts were committed. TEX. PENAL CODE ANN. § 21.02(d) (West Supp. 2014). Furthermore, the testimony of a child victim alone is sufficient to support a conviction for continuous sexual abuse of a child. *See* TEX. CODE CRIM. PROC. ANN. art. 38.07 (West 2005); *Lee v. State*, 186 S.W.3d 649, 655 (Tex.App. – Dallas 2006, pet. ref'd).

Appellant only challenges the legal sufficiency of the evidence on the first and second elements of the offense. In particular, Appellant asserts there is only one alleged act of sexual abuse in the record and no evidence that the alleged abuse occurred over a span of thirty days or more.

### *Two or More Acts of Sexual Abuse*

At trial, H.N. testified Appellant put his hand underneath her underwear and started rubbing the inside of her tee-tee while she was sitting on a chair at his house. She stated that she used her "tee-tee" to pee. Similarly, Paula, Robinson, and Nurse Crouch testified that H.N. stated Appellant used his hands to touch her vagina. July 20, 2009 was the only specific date provided

6

by the State on which an instance of sexual abuse of H.N. occurred.

H.N. denied that Appellant had touched her tee-tee any other time than the time she described at trial. However, Robinson testified that during her forensic interview with H.N., H.N. indicated the abuse happened more than twenty times. The video-recording of H.N.'s forensic interview shows that H.N. said the abuse occurred more than twenty times. At trial, H.N. testified she remembered stuff better back then rather than three years later, and indicated it was hard for her to remember stuff from a long time ago. Based on this conflicting evidence, a rational trier of fact could have found Appellant committed two or more acts of sexual abuse. *See Hooper*, 214 S.W.3d at 13 (it is the role of the jury to resolve any conflicts of testimony and to draw rational inferences from the facts); *Brooks*, 323 S.W.3d at 899 (the jury is the sole judge of the weight and credibility of the witnesses).

### *Span of Thirty Days or More*

Appellant argues the evidence is legally insufficient to establish the sexual abuse of H.N. took place over a span of thirty or more days. He further asserts there is no evidence of a time period. We disagree.

Paula testified Appellant was married to Vickie for three to five years and that she was in Alabama when they got married. She testified that before July 2009, she would frequently leave her kids with Appellant and Vickie. When asked if her kids stayed overnight every weekend, Paula answered, "Maybe not every weekend but it was a lot." Paula stated that her children's sleepovers at their grandparents occurred over a period of a couple of years. According to H.M.'s trial testimony, H.M. went to her grandparents' home every other weekend and would stay until Sunday.

7

During H.M.'s forensic interview, H.M. indicated Appellant used his hand to open and touch the inside of her vagina. When asked if Appellant had done this before, H.M. stated, "It's been a long time that he did it. He did it for a long time." When asked for further clarification, H.M. stated "sometimes when I'm there he did it a lot and then he would rub up my shirt." H.M. had no idea how young she was when it started and indicated that it happened more than twenty times and always happened at Appellant's house.

Robinson did not talk to H.M. about each of the twenty times Appellant touched H.M. She explained it was difficult for a child to talk about each time when there had been several incidents of abuse. Robinson testified that H.M. did not provide any specific references that would allow Robinson to pinpoint when the other twenty instances of abuse occurred.

Although H.M. was not able to provide exact dates that Appellant touched the inside of her vagina, based on H.M.'s and Paula's statements concerning the period of time and frequency of H.M.'s visits to Appellant's home as well as the statements H.M. made during her forensic interview relating to the additional instances of sexual abuse that occurred prior to July 20, 2009, the last date of abuse, the jury could have reasonably inferred that the evidence showed that Appellant's abuse of H.M. took place over a span of thirty days or more. *See Hooper*, 214 S.W.3d at 15 (noting that juries are permitted to draw reasonable inferences as long as each inference is supported by the evidence presented at trial); *Williams*, 305 S.W.3d at 890 n.7 (finding the evidence to be legally sufficient to support finding that two or more acts of sexual abuse occurred over a span of thirty days or more where child said she was abused "more than once" and noting that the child's inability to articulate the exact dates of the abuse is precisely the kind of situation the Legislature considered when it enacted Section 21.02 of the Texas Penal Code). Viewing the

evidence in a light most favorable to the verdict, we hold the evidence is legally sufficient to establish the challenged elements of the offense of continuous sexual abuse of a child. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789; *Brooks*, 323 S.W.3d at 895. Accordingly, we conclude the evidence was legally sufficient to support Appellant's conviction. Issue One is overruled.

## Constitutionality of Section 21.02

In Issues Two and Three, Appellant challenges the constitutionality of Section 21.02 of the Texas Penal Code. In Issue Two, he argues Section 21.02(d) is facially unconstitutional because it violates due process by nullifying the jury unanimity requirement and consequently lowering the burden of proof. In Issue Three, Appellant contends Section 21.02 is facially unconstitutional by raising due process and equal protection claims regarding the punishment scheme of Section 21.02. The State responds Appellant waived his complaints as he failed to raise them below. We agree with the State.

Appellant asserts his complaints are not waived on appeal because they facially challenge the constitutionality of Section 21.02. However, the Texas Court of Criminal Appeals has held that a facial challenge to the constitutionality of a statute is a forfeitable right that is waived if the defendant fails to raise the issue in the trial court. *Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009). Appellant made no objection to the trial court about the constitutionality of Section 21.02 nor did he raise any complaint in his motion for new trial. Therefore, Appellant has failed to preserve his complaints for our review. *See id.*; TEX.R.APP.P. 33.1; *see also Williams*, 305 S.W.3d at 893 (finding appellant failed to preserve any complaint that statute was unconstitutional). Issues Two and Three are overruled.

## Ex Parte Communications

9

In Issue Four, Appellant asserts his due process rights were effectively abolished because of ex parte communications between the trial court and the State regarding Appellant's pending motion for a directed verdict. The record in this case shows that after the State rested, Appellant moved for a directed verdict which was taken under advisement by the trial court after hearing the parties' arguments. When court reconvened, Appellant moved for a mistrial based on improper ex parte communications between the trial court and the State. Specifically, Appellant maintained that the State's provision of case law to the trial court and the State's filing of a trial brief in response to Appellant's motion for directed verdict constituted improper ex parte communications between the trial court and the State where the trial court did not ask for case law or briefs from the parties.[3] We disagree.

A judge is prohibited from initiating, permitting, or considering ex parte communications regarding the merits of a pending case. TEX. CODE JUD. CONDUCT, CANON 3(B); *Morgan v. State*, No. 05-08-00694-CR, 2009 WL 4283104, at *1 (Tex.App. – Dallas Dec. 2, 2009, no pet.). An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter. *Erskine v. Baker*, 22 S.W.3d 537, 539 (Tex.App. – El Paso 2000, pet. denied). The purpose of prohibiting ex parte communications is to ensure all legally interested parties are given their full right to be heard under the law and to ensure equal treatment of all parties. *Abdygapparova v. State*, 243 S.W.3d 191, 207 (Tex.App. – San Antonio 2007, pet. ref'd).

Appellant relies on *Abdygapparova* in support of his argument. However, we find *Abdygapparova* to be distinguishable from the instant case. In *Abdygapparova*, the trial court and

---

[3] The record reflects the State simultaneously provided Appellant with the legal citations to the cases via text message and faxed him a copy of its trial brief.

the State exchanged a series of notes during voir dire with the expectation that they would remain private as the notes provided guidance on the State's presentation of the case. *See Abdygapparova*, 243 S.W.3d at 207-08. The court of appeals held that the communications showed bias on the part of the trial court and prevented Abdygapparova from receiving a fair and impartial trial. *Id*. at 209. Here, unlike *Abdygapparova*, there is no evidence of any type of conversation between the trial court and the State, rather the record shows that the State merely provided the trial court with copies of case law and filed a trial brief. Moreover, we note the trial court stated on the record that it had received a couple of cases from the State and noted that it expected the State had provided Appellant with the same cases via text message. The trial court also recognized the State's trial brief contained a certificate of service indicating that a copy was provided to Appellant. Additionally, unlike *Abdygapparova*, the complained of actions in this case do not show any bias on the part of the trial court in favor of the State. *See id*. Because the complained of actions do not constitute improper ex parte communications, we conclude there was no violation of Appellant's due process rights. Issue Four is overruled.

## CONCLUSION

The judgment of the trial court is affirmed.


GUADALUPE RIVERA, Justice

August 29, 2014

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)

11