**Opinion filed June 4, 2026**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00112-CV

_____

**LENI PETROV, Appellant**

**V.**

**WILL-BROOKS INV, LLC, Appelle**

**On Appeal from the County Court at Law**
**Erath County, Texas**
**Trial Court Cause No. 24CVCC-00032**

## M E M O R A N D U M   O P I N I O N

This appeal arises from an eviction suit.  Appellee, Will-Brooks Inv, LLC, filed an eviction suit in justice court on February 8, 2024 against Appellant, Leni Petrov, based upon an allegation of unpaid rent.  In the petition that it filed in the justice court, Appellee alleged unpaid rent in the amount of $721.06 for the period of August 2023 to February 2024.  After a bench trial, the justice court awarded

possession to Appellee as well as a judgment in the amount of $1,029 for costs and unpaid rent.

Appellant appealed the judgment to the Erath County Court at Law. Appellee filed an amended petition in the county court wherein it alleged unpaid rent and utility expenses of $3,478 for the "residential portion of the property" and $14,946 for unpaid boarding expenses for horses. Additionally, Appellee sought to impose a landlord's lien on Appellant's personal property. Appellee also sought the recovery of attorney's fees in the amended petition.

The county court conducted a bench trial on April 4, 2024. Appellant appeared pro se at trial and is pro se on appeal. When the county court initially called the case for trial, Appellant was not present. Because Appellant did not appear at the beginning of the hearing, Appellee's counsel advised the county court that he would be seeking a default judgment. The county court asked Appellee's counsel to approach the bench, at which point a discussion off the record occurred. This discussion ended when Appellant belatedly appeared for trial. In that regard, the county court stated that it had "just called the case," indicating that the discussion with Appellee's counsel was brief.

Appellant did not make an announcement of "ready." Instead, she advised the county court that she had only discovered Appellee's amended petition a few days earlier. In that regard, the attorney that represented Appellant in the justice court had withdrawn from the case. Appellant filed a written motion for continuance based upon her allegation that she needed time to get legal advice. The county court denied Appellant's motion for continuance and proceeded to hear the case.

Blake Brooks testified that he and his wife were the owners of Will-Brooks Inv, LLC and that it owned a piece of property located on County Road 419 in Stephenville. Appellee leased an apartment located on the property to Appellant. Appellee offered into evidence a written Texas Relators residential lease that was

2

not signed by Appellant. Appellant asserted that she was never given a copy of this lease. However, Appellant electronically signed a Texas Relators residential lease application. Brooks testified that both documents were electronically sent to Appellant at the same time and that she reported that she could not open the lease agreement in order to electronically sign it. He further testified that Appellant was agreeable to the terms set out in the lease agreement. Brooks stated that Appellant agreed to pay rent of $900 a month for the apartment as well as utilities for the property. He testified that she never paid any of the required utilities.

Brooks and his wife lived on the same property as the apartment that Appellant leased. The property also included a horse barn that shared an electric meter with the apartment. Brooks testified that Appellant executed separate horse boarding agreements with Appellee that charged her $200 per horse a month, and that Appellant boarded nine horses on the property pursuant to the horse boarding agreements. The $200 per horse fee included the use of the barn, pasture, and stalls. However, Appellee agreed to only charge Appellant $1,500 a month for horse boarding based on her agreement to limit the number of horses staying in the barn.

Brooks testified that he delivered a notice to vacate to Appellant on February 2, 2024, and that it was for "the entire address, the entire property." In that regard, Appellee offered into evidence a statement of account for Appellant's arrearages from the inception of the lease in July 2023 to the date of trial. For the apartment, the statement indicated that Appellant had paid the $900 rent through January 2024. However, the statement indicated that she had not paid any amounts for electric bills since the inception of the lease. According to the statement, Appellant owed $3,478 for unpaid rent and electric bills for the apartment as of April 3, 2024.

Brooks also offered testimony about another statement of account for the horse boarding agreements. This statement indicated that Appellant owed $14,946

3

for unpaid horse boarding and late fees. Brooks also testified that he had retained personal property belonging to Appellant related to the horses under his asserted stableman's/landlord's lien, and he asked the county court to permit him to enforce it.

When called as an adverse witness, Appellant testified that she planned to move out of the residence that month. She had previously removed the horses from the property. Appellant agreed that Brooks's wife orally told her the amount of utilities that she owed the first month. Appellant agreed that she did not protest to Brooks's wife about being charged utilities. Appellant testified that she did not "have a problem paying . . . the utilities," but she wanted a breakdown between her usage and other people on the property. Appellant stated that she was only presented with one utility bill and that she did not know how much to pay. Appellee's counsel asked Appellant: "So whether it's an oral lease or a written lease, you acknowledge that you were supposed to pay the utilities every month?" Appellant replied: "I acknowledge that it was told to me after I moved in, and I did not object to it at that time."

Appellant then testified on her own behalf. She testified that her agreement with Appellee was to pay $900 in rent for the apartment. She took the position that the utilities were separate. Appellant stated that Appellee never presented her with the written statement of account that Brooks offered into evidence, and her nonpayment for the apartment arose solely from unpaid utilities and not the actual rent of $900 a month. Ostensibly, Appellee took the position that the nonpayment of utilities could not be the basis for an eviction suit.[1] With respect to the horse

---

[1]Appellant testified: "I -- I mean, my rent for my apartment, bottom line, is paid. You can't -- the -- it's not -- they can't evict me for unpaid utility bills . . . especially after they've not been billed to me."

boarding delinquency, Appellant asserted that the horse boarding agreements were a separate matter that "[did] not qualify for suit under a nonpay residential eviction."

The county court clarified Appellee's position with its counsel. Counsel asserted that while there were two agreements with Appellant, one for the apartment and another for the horse boarding, stating, "[I]t's all one property." Counsel asserted that "Brooks went to go evict [Appellant] for all of it" in the justice court, and the justice court erred in determining that it "[couldn't] evict horses."[2] Counsel acknowledged that Appellant timely paid the rent for the apartment in full. The $3,478 sought for the apartment was for unpaid utilities. Counsel asserted that even though Appellant did not sign the residential lease, she was bound to pay the utilities by her oral agreement and continued performance.

At the conclusion of the evidence, the county court orally announced that it was awarding judgment to Appellee. However, the county court advised Appellant that it would permit her to make an "offer of proof" that afternoon of anything that she wanted to put into the record for appellate purposes. Appellant offered as additional evidence an answer to Appellee's amended petition, a supplemental answer, and her handwritten notes on the statement of account for the rent that should have been due on the residential portion of the lease.

In its final judgment, the county court determined that it did not have jurisdiction over Appellee's request for a landlord's lien. It awarded possession of the property to Appellee and awarded a money judgment to Appellee in the amount of $18,424 with a credit of $1,100 to Appellant for amounts that she had tendered while the case was pending. The county court also awarded judgment to Appellee for attorney's fees in the amount of $2,500.

---

[2]Appellant took the position that there was "no need" to file an eviction action with respect to the horses because she voluntarily removed them.

Appellant challenges the county court's judgment in six issues.[3] We reverse and modify in part, and we affirm in part.

*Analysis*

We note at the outset that Appellant has included several photos and exhibits in her brief that do not appear in either the clerk's record or the reporter's record. An appellate court is required to consider a case solely on the appellate record (citing of the clerk's record and the reporter's record), and it cannot consider documents attached to briefs as exhibits or appendices. *Robb v. Horizon Cmtys. Improvement Ass'n*, 417 S.W.3d 585, 589 (Tex. App.—El Paso 2013, no pet.); *Cherqui v. Westheimer St. Festival Corp.*, 116 S.W.3d 337, 342 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Brown v. McGonagill*, 940 S.W.2d 178, 179 (Tex. App.—San Antonio 1996, no writ); *see WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 465 n.23 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) ("[W]e cannot consider documents attached as appendices to briefs and must consider a case based solely upon the [appellate] record filed."). Attaching documents to briefs as exhibits or appendices does not make them part of the appellate record. *Robb*, 417 S.W.3d at 589. Accordingly, we do not consider any matters cited by Appellant that are not included in either the clerk's record or the reporter's record.

We additionally note that a case becomes moot if, during any stage of the proceedings, a controversy ceases to exist between the parties. *See Williams v. Lara*, 52 S.W.3d 171, 184 (Tex. 2001). In an eviction case, the issue of possession becomes moot when the appellant ceases to have actual possession of the property, unless the appellant asserts a potentially meritorious claim of right to present, actual possession of the premises. *Marshall v. Housing Auth. of San Antonio*, 198 S.W.3d 782, 786-87 (Tex. 2006). "However, the entire case only becomes moot if a

---

[3]Appellant includes six issues in her brief numbered one, two, three, five, six, and seven.

6

controversy ceases to exist or the parties lack a legally cognizable interest in the outcome." *Allen-Mercer v. Roscoe Props.*, No. 03-15-00674-CV, 2016 WL 4506294 at *2 (Tex. App.—Austin Aug. 25, 2016, no pet.) (mem. op.) (citing *Dafarty v. Prestonwood Mkt. Square, Ltd.*, 399 S.W.3d 708, 711 (Tex. App.–Dallas 2013, pet. denied)).

Appellant asserts that she no longer has possession of the premises. Taking as true Appellant's statement that she no longer has actual possession of the property, the issue of possession would appear to be moot. *See id.* (citing *Dafarty*, 399 S.W.3d at 711). However, Appellant's issues with respect to Appellee's claims for unpaid rent and attorney's fees appear to continue to present live controversies. *Id.*

*Motion for Continuance and Due Process*

In her first issue, Appellant contends that the county court violated her due process rights when it denied her motion for continuance. She asserts that the amended petition was not timely filed and that it was not properly served on her.

We review a court's ruling on a motion for continuance under an abuse of discretion standard. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). A trial court commits an abuse of discretion if its decision is "so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 800 (quoting *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985)).

Here, Appellant's written motion for continuance only referenced that she needed more time to secure legal counsel. She did not assert in her written motion that Appellee filed the amended petition late or that it failed to properly serve her with it. Appellant only asserted these claims in arguing her motion for continuance to the county court.

A motion for continuance should be in writing. TEX. R. CIV. P. 251–254; *DeBoer v. Attebury Grain, LLC*, 684 S.W.3d 520, 536 (Tex. App.—Eastland 2024,

7

no pet.). An oral continuance request generally does not preserve error. *See DeBoer*, 684 S.W.3d at 535 (citing *Kinder Morgan Prod. Co., LLC v. Scurry Cnty. Appraisal Dist.*, 637 S.W.3d 893, 915 (Tex. App.—Eastland 2021, pet. denied)). It must be verified or supported by affidavit; if not, an appellate court will presume that the trial court did not abuse its discretion in denying the motion. *Id.* at 536 (citing *Serrano v. Ryan's Crossing Apartments*, 241 S.W.3d 560, 564 (Tex. App.—El Paso 2007, pet. denied)).

Because Appellant did not present her claims of untimely filing and service in her written motion for continuance, and because she did not support her oral motion for continuance with an affidavit as required by Rule 251, we presume that the county court did not abuse its discretion in denying the motion. *See id.*; *Kinder Morgan Prod. Co., LLC*, 637 S.W.3d at 915.

The record does not show that the county court abused its discretion by denying Appellant's motion for continuance. The certificate of service on counsel's motion to withdraw does not show that it was served on counsel for Appellee. Further, the order granting the motion to withdraw does not indicate that it was served on Appellee's counsel. Accordingly, Appellee's counsel cannot be faulted for not serving the amended petition directly on Appellant when he was unaware that only one and one-half hours earlier, the county court had permitted Appellant's counsel to withdraw. Additionally, Appellee filed its amended petition seven days prior to the date of trial. Thus, Appellee was not required to seek leave of court before filing the amended petition in accordance with Rule 63 of the Texas Rules of Civil Procedure. TEX. R. CIV. P. 63. Further, the record does not show that Appellant was surprised by the new claims added to Appellee's amended petition because of the existing disputes between the parties.

Appellant additionally asserts in her first issue that the county court violated her due process rights by failing to consider her defenses in the final judgment. She

premises this contention on the fact that the county court allowed her to file an offer of proof only after it orally announced its decision to award a judgment in favor of Appellee. The appellate record does not support Appellant's contention. At trial, the county court permitted Appellant to present all evidence that she sought to offer. The fact that the county court disagreed with Appellant's factual contentions does not support the conclusion that the county court did not consider her defenses.

We overrule Appellant's first issue.

*Ex Parte Communication*

Appellant asserts in her second issue that Appellee's counsel engaged in improper ex parte communications with the county court. She bases this issue on the conversation between the county court and Appellee's counsel that occurred when Appellant did not appear at the time that the case was called for trial.

Ex parte communications involve fewer than all the parties who are *legally entitled* to be present during the discussion of any matter with the judge. *Erskine v. Baker*, 22 S.W.3d 537, 539 (Tex. App.—El Paso 2000, pet. denied); *Youkers v. State*, 400 S.W.3d 200, 206 (Tex. App.—Dallas 2013, pet. ref'd.). Ex parte communications are prohibited because they are inconsistent with the principles of an impartial judiciary and a litigant's right to be heard. *Erskine*, 22 S.W.3d at 539; *Youkers*, 400 S.W.3d at 206.

Here, the county court did not engage in improper ex parte communication. Because Appellant failed to appear at the scheduled time for trial, she was essentially in default. Appellant was not legally entitled to be present during the county court's discussion with counsel because of her failure to timely appear. Further, there is no indication in the appellate record of either the duration or content of the discussion between the county court and Appellee's counsel. Thus, there is no indication in the appellate record that Appellant was harmed by the conversation. Accordingly, we overrule Appellant's second issue.

*Matters that Can be Considered in an Eviction Appeal from the Justice Court – Sufficiency of the Evidence*

In her third issue, Appellant asserts that the county court did not have subject-matter jurisdiction to consider the horse boarding contracts because they were independent of her residential lease. She contends that the apartment where she lived was independent of the horse facilities on the property. Further, Appellant asserts that she executed the horse boarding agreements a week after moving into the apartment. Appellant also contends that Appellee could not seek a recovery based on the horse boarding agreements because they were not asserted in the justice court.

"Eviction suits are designed to provide 'a summary, speedy, and inexpensive remedy for the determination of who is entitled to possession of the premises.'" *Westwood Motorcars, LLC v. Virtuolotry, LLC*, 689 S.W.3d 879, 883 (Tex. 2024) (quoting *McGlothlin v. Kliebert*, 672 S.W.2d 231, 232 (Tex. 1984)). "[E]viction suits are limited in scope and effect, with the 'sole focus' being 'the right to immediate possession of real property.'" *Id.* (quoting *Shields Ltd. P'ship v. Bradberry*, 526 S.W.3d 471, 478 (Tex. 2017)). However, a landlord may recover unpaid rent in an eviction suit provided the claim is within the justice court's jurisdiction. TEX. PROP. CODE ANN. § 24.0051 (West Supp. 2025)[4]; TEX. R. CIV. P. 510.3(d); *see Johnson v. Guillory*, No. 14-22-00396-CV, 2023 WL 8043680, at *3 (Tex. App.—Houston [14th Dist.] Nov. 21, 2023, pet. denied) (mem. op.); *Allen-Mercer*, 2016 WL 4506294 at *4. Generally, justice courts have civil jurisdiction in which the amount in controversy does not exceed $20,000. TEX. GOV'T CODE ANN. § 27.031(a)(1) (West Supp. 2025).

---

[4]The Texas Legislature enacted a substantial revision of Chapter 24 effective January 1, 2026. *See* Act of May 28, 2025, 89th Leg., R.S., ch. 960, 2025 Tex. Sess. Law Serv. 2155, 2163. In turn, the Texas Supreme Court completely revised the eviction rules in the Texas Rules of Civil Procedure effective January 1, 2026. *See* TEX. R. CIV. P. 510 cmt. Appellee's petition was filed before January 1, 2026. Therefore, all citations in this opinion to statutes and rules are to those in effect at the time this case was tried in the county court.

"Although the justice court's judgment may be appealed to county court, 'the county court has no greater jurisdiction than the justice court had.'" *Westwood Motorcars*, 689 S.W.3d at 883; (quoting *Tellez v. Rodriguez*, 612 S.W.3d 707, 709 (Tex. App.—Houston [14th Dist.] 2020, no pet.)). The amounts actually sought and awarded in this case for accrued unpaid rent did not exceed the jurisdictional authority of either court.

An appeal from justice court to county court has the effect of vacating the justice court's judgment, and the county court must try the matter de novo. *Zhao v. Sea Rock Inc.*, 659 S.W.3d 119, 123 n.4 (Tex. App.—El Paso 2022, pet. denied); *see* TEX. R. CIV. P. 510.10(c). "[I]n other words, the county court must hold a 'new trial in which the entire case is presented as if there had been no previous trial.'" *Zhao*, 659 S.W.3d at 123 n.4 (quoting TEX. R. CIV. P. 506.3). "A trial de novo is generally defined as a new trial on the entire case, on both questions of fact and issues of law." *Id.* (citing *Laws v. Roberson*, No. 05-20-00342-CV, 2022 WL 224358, at *1 (Tex. App.—Dallas Jan. 26, 2022, no pet.) (mem. op.)).

Here, because the actions in the justice court were vacated by the appeal to the county court, the matters litigated in the justice court were of no effect on the county court's jurisdiction. Thus, the county court had jurisdiction to consider Appellee's claims for unpaid utility bills and horse boarding to the extent those claims constituted claims for unpaid rent arising from the property even though the justice court did not permit those claims. The fact that these claims were not litigated in the justice court was of no consequence.

An eviction suit determines "who is entitled to possession of *the premises*.'" *Westwood Motorcars*, 689 S.W.3d at 883 (quoting *McGlothlin*, 672 S.W.2d at 232) (emphasis added). "A landlord who prevails in an eviction suit is entitled to a judgment for possession of the premises and a writ of possession." PROP. § 24.0061(a). For purposes of Chapter 24, "'premises' means the unit that is

11

occupied or rented and any outside area or facility that the tenant is entitled to use under a written lease or oral rental agreement, or that is held out for the use of tenants generally." *Id.* Eviction suits are not limited to spaces occupied solely for residential purposes.[5] *See id.* Brooks testified that Appellant and the horses in her care occupied the same property. Appellant has not cited, nor have we found authority that precludes two rental agreements being the subject of a single eviction case when they apply to the same premises and neither supersedes the other.

Appellant is essentially asserting that Appellee's claims for unpaid horse boarding and utility bills do not constitute claims for *rent*. As noted in *BP Oil Pipeline Co. v. Plains Pipeline, L.P.*, 472 S.W.3d 296, 303 (Tex. App.—Houston [14th Dist.] 2015, pet. denied):

> "Rent" is "[c]onsideration paid, usu[ally] periodically, for the use or occupancy of property (esp. real property)." *Black's Law Dictionary* 1322 (8th ed. 2004). *See also id.* (defining "lease" as "[t]o grant the possession and use of (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration"). "Rent" also is defined as "a usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof; especially: an agreed sum paid at fixed intervals by a tenant to the landlord." *Merriam–Webster's Collegiate Dictionary* 1054 (11th ed. 2004).

In its simplest terms, "rent" is "something paid to a landlord or owner in exchange for the right to use, occupy, or possess real or personal property." *Id.*

---

[5]Section 24.007 of the Texas Property Code states, "A final judgment of a county court in an eviction suit may not be appealed *on the issue of possession* unless the premises in question are being used for residential purposes only." PROP. § 24.007 (West 2023) (emphasis added). To the extent that Appellant was using the property for commercial purposes, we would not have jurisdiction over this appeal as it relates to issues of possession. *See Manning v. Johnson*, 642 S.W.3d 871, 879 (Tex. App.—Texarkana 2021, no pet.). As set out above, we have already determined that the issue of possession is now moot in this appeal.

With respect to horse boarding, Appellant agreed to pay rent of $1,500 per month pursuant to written agreements to use and occupy a portion of the premises for horses. Accordingly, the horse boarding fees were recoverable as rent in this eviction suit. However, Appellee also assessed a monthly late fee of $1,215 for the unpaid horse boarding. Charges assessed for the late payment of rent are not recoverable in an eviction suit, and neither the justice court nor the county court has jurisdiction to award them. *See Allen-Mercer*, 2016 WL 4506294 at *5. Accordingly, we reverse in part the county court's money award to Appellee in the amount of $6,750 which equals the late fees that Appellee assessed for horse boarding.

However, the Third Court of Appeals noted in *Allen-Mercer* that the tenant's payment of utility bills can constitute the payment of rent under the terms of the lease. *Id.* at *4 (citing *Carlson's Hill Country Beverage, L.C. v. Westinghouse Rd. Joint Venture*, 957 S.W.2d 951, 955 (Tex. App.–Austin 1997, no pet.) (concluding that under terms of lease at issue, property tax was within the nature of rent and related to maintaining possession of premises)). Accordingly, utility charges are not per se excluded as rent that is recoverable in an eviction suit—they are recoverable if they are in the nature of rent under the terms of the parties' lease agreement. *See id.*

Appellant challenges the sufficiency of the evidence with respect to the unpaid utilities. When parties challenge the legal sufficiency of the evidence supporting an adverse finding on which they did not have the burden of proof at trial, they must demonstrate that there is no evidence to support the adverse finding. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). Under a legal sufficiency review, we consider all of the evidence in the light most favorable to the prevailing party, make every reasonable inference in that party's favor, and disregard contrary evidence unless a reasonable

13

factfinder could not. *City of Keller*, 168 S.W.3d at 807, 822, 827. We cannot substitute our judgment for that of the factfinder if the evidence falls within this zone of reasonable disagreement. *Id.* at 822.

The evidence is legally insufficient to support a finding only if (1) the record discloses a complete absence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. "Anything more than a scintilla of evidence is legally sufficient to support the finding." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998). "More than a scintilla of evidence exists when the evidence would enable reasonable and fair-minded people to reach different conclusions." *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Tex., Inc. v. Tex. Disposal Sys. Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014).

If a party attacks the factual sufficiency of an adverse finding on an issue in which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Croucher*, 660 S.W.2d at 58. In a factual-sufficiency challenge, we consider and weigh all of the evidence, both supporting and contradicting the finding. *See Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998). We may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* at 407. We may not substitute our own judgment for that of the factfinder or pass upon the credibility of witnesses. *Id.*

Appellant cites Section 93.012 of the Property Code for the proposition that a charge for utility bills can only be assessed to a tenant if stated in a written lease.

*See* PROP. § 93.012 (West 2023). However, this section is contained within Chapter 93, which governs commercial tenancies. PROP. § 93.001. Appellant has not cited a similar provision dealing with residential tenancies. Here, the parties had a month-to-month oral tenancy. Brooks testified, and Appellant agreed, that Appellee charged a portion of the utilities for use of the premises and that Appellant "did not object to it at that time." This oral testimony was both legally and factually sufficient evidence that Appellant agreed to pay a portion of the utilities as rent for her use of the premises. Brooks testified that the barn and Appellant's living quarters were on the same electric bill and that Appellee assessed 65% of the charge to Appellant because other tenants also had use of the barn. He stated that the only electricity used in the barn was for lights, whereas Appellant's living quarters used a larger amount of electricity because it was occupied full-time. Appellee's apportionment of the electric bill as well as the charges it assessed for it were matters to be resolved by the county court as the factfinder, and Brooks's testimony constituted legally and factually sufficient evidence in support of the county court's determination.

Accordingly, we sustain Appellant's third issue with respect to the assessment of late fees under the horse boarding agreements, but we overrule it with respect to the rent due for horse boarding and the utility bills assessed by Appellee.

### The Right to Possession is Moot

Appellant asserts in her fifth issue that the county court erred by granting Appellee the right of possession of the living quarters because no rent was in arrears. Appellant bases this contention on her argument that the unpaid utilities did not constitute rent. We overruled this argument in our disposition of Appellant's third issue. And because Appellant is no longer in possession of the premises, the issue of possession is now moot. *See Allen-Mercer*, 2016 WL 4506294 at *2. We overrule Appellant's fifth issue.

*Landlord's Lien*

In her sixth issue, Appellant contends that the county court erred by severing the issue of Appellee's landlord's lien instead of dismissing the claim with prejudice. Appellant bases this contention on the county court's oral announcement at the end of trial. But in the county court's written final judgment, it did not sever the issue of Appellee's landlord's lien—it announced that it did not have jurisdiction to consider it.[6] Irrespective of this distinction, the county court did not err by not dismissing Appellee's claim for a landlord's lien with prejudice. A dismissal with prejudice for lack of subject-matter jurisdiction constitutes error. *Black v. Jackson*, 82 S.W.3d 44, 56 (Tex. App.—Tyler 2002, no pet.) (citing *Mossler v. Shields*, 818 S.W.2d 752, 754 (Tex. 1991)). In this regard, if a court determines that it lacks subject-matter jurisdiction, it should not render a judgment on the merits by dismissing the claim with prejudice. *See id.* We overrule Appellant's sixth issue.

*Attorney's Fees*

Appellant asserts in her seventh issue that the award of attorney's fees to Appellee were not permitted because Appellant did not give ten days' notice to vacate as required by Section 24.006 of the Texas Property Code. PROP. § 24.006. We construe this issue as a challenge to the legal sufficiency of the evidence to support the attorney's fee award. *See Heimlich v. Cook*, No. 14-22-00358-CV, 2023 WL 3596264, at *4 (Tex. App.—Houston [14th Dist.] May 23, 2023, no pet.) (mem. op.) The statute requires that in order for a landlord to recover attorney's fees in an eviction case, it must make a written demand on the tenant to vacate at least ten days before the suit is filed, unless there is a written lease provision that entitles the landlord to recover attorney's fees. PROP. § 24.006.

---

[6]Appellant does not challenge the county court's determination that it lacked jurisdiction. Accordingly, we do not consider the merits of the county court's jurisdictional determination.

16

"Because forcible detainer is a statutory cause of action, a landlord must strictly comply with statutory requirements." *Heimlich*, 2023 WL 3596264, at *5 (citing *Kennedy v. Andover Place Apartments*, 203 S.W.3d 495, 497 (Tex. App.—Houston [14th Dist.] 2006, no pet.)). Appellee issued its notice to vacate on February 2, 2024, giving Appellant three days' notice to vacate the premises. Appellee filed its eviction petition on February 8, 2024. Here, Appellee's notice to vacate did not strictly comply with the statutory requirements because it did not state that if Appellant failed to vacate before the eleventh day after the date of receipt of the notice, Appellee may recover attorney's fees if it filed suit. This failure is fatal to Appellee's claim for attorney's fees. *Id.*; *see* PROP. § 24.006(a). We sustain Appellant's seventh issue by reversing the $2,500 award in attorney's fees.

### This Court's Ruling

We modify the county court's judgment to delete the attorney's fee award of $2,500 and to reduce the damage award of $18,424 to $11,674. As modified, we affirm the judgment of the county court.


JOHN M. BAILEY
CHIEF JUSTICE


June 4, 2026

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

17